STATE OF CONNECTICUT *v.* MICHAEL OLENICK III
(AC 26268)

DiPentima, Gruendel and Harper, Js.

Argued September 26—officially released December 12, 2006

*Donald R. Beebe*, with whom were *David C. Warner*, and, on the brief, *Bethany E. Babbitt*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Vincent J. Dooley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Michael Olenick III, appeals from the judgment of conviction rendered by the trial court following his conditional plea of nolo contendere to the charge of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. On appeal, the defendant claims that the court improperly denied (1) his motion to dismiss and (2) his motion to disqualify or recuse.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. The defendant was charged by substitute information with operating a motor vehicle while under the influence of intoxicating liquor on the basis of two separate urine tests that measured his blood alcohol content. James E. O'Brien, the defendant's medical expert, submitted a letter dated August 17, 2004, to the defendant, in which O'Brien concluded that the urine tests were "invalid and bear no relationship to [the defendant's] blood alcohol level at the time in question. . . ."[2] He based his conclusion on his understanding that the defendant "had not

[1] The defendant's statement of issues also includes claims that the court improperly denied his motion to quash and improperly failed to enforce the plea agreement. Because these claims are subsumed in our discussion of the first two claims, we do not review them separately. See, e.g., *Bauer* v. *Souto*, 277 Conn. 829, 833 n.5, 896 A.2d 90 (2006); *Zhang* v. *Omnipoint Communications Enterprises, Inc.*, 272 Conn. 627, 630 n.3, 866 A.2d 588 (2005).

[2] The letter was submitted to the defendant, and its contents formed the crux of the defendant's arguments during the pretrial conference. In addition, it was attached to the defendant's affidavit in support of his motion to disqualify and recuse, and was marked as an exhibit for the November 2, 2004 hearing on the defendant's motions.

voided for a couple of hours before the first urine sample, nor did he void completely before giving the second urine sample."

On September 16, 2004, a pretrial conference was held during which the parties and the court, *Driscoll, J.*, discussed the results reached by O'Brien in his letter regarding the accuracy of the urine tests' measure of blood alcohol content. The prosecutor indicated that she would have another toxicologist review the results and the opinions of O'Brien. After discussing the issue, the parties established that if the state's toxicologist agreed with O'Brien's assessment or suggested reasonable doubt, then the charge would be reduced to reckless driving. The prosecutor noted the agreement on the defendant's file.[3]

After reviewing the evaluation of Robert H. Powers, a forensic toxicologist, the state concluded that the experts were not in agreement and that Powers had not suggested that O'Brien's letter would introduce reasonable doubt into the proceedings. Thereafter, the state put the matter on the firm trial list.

On October 13, 2004, the defendant filed a motion to strike the matter from the firm trial list, claiming that the state was not honoring the agreement and that the case should be referred back to the court "for further [pretrial] proceedings." On October 27, 2004, the defendant filed motions to dismiss and to quash, and on November 2, 2004, he filed a motion to disqualify Judge Driscoll from sitting on the motions because there was "a dispute of facts as to what was agreed upon in the

---

[3] The state's notation on the defendant's file folder was comprised of the following: "9/16/04, judicial pretrial with Driscoll, Judge; [the prosecutor]; at which I conveyed state's offer and battle of expert. Where's our tox report? Continued for our report. [Forensic toxicologist Robert H.] Powers to review their expert's report. If our expert agrees with the defendant's or suggests reasonable doubt, then reckless; [if] not, three one five. Starts and scheduled for trial with Dannehy, J. (Foley, J. has conflict with attorney)."

in-chambers judicial pretrial in this matter on September 16, 2004." The defendant concurrently filed an affidavit in support of his motions. At the conclusion of the November 2, 2004 hearing, the court denied all of the defendant's motions. Thereafter, the defendant pleaded nolo contendere to the charge of operating a motor vehicle while under the influence of intoxicating liquor, pursuant to § 14-227a, with the express condition that he reserve his right to appeal. The defendant was sentenced on February 1, 2005, to three years imprisonment, execution suspended after one year mandatory, followed by three years probation.[4] This appeal followed.

I

The defendant first claims that the court improperly denied his motion to dismiss. Specifically, he argues that Powers agreed with O'Brien and suggested reasonable doubt; therefore, pursuant to the plea agreement inscribed on the file, the court should have granted his motion to dismiss. We disagree.

The defendant's motion to dismiss was based entirely on the allegation that the state failed to honor the plea agreement. The court made findings regarding the parties' interpretation of the agreement, which we analyze under the clearly erroneous standard of review. "[T]o the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in

---

[4] This was the defendant's third conviction under General Statutes § 14-227a.

favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Payne*, 96 Conn. App. 488, 493, 901 A.2d 59, cert. denied, 280 Conn. 913, 908 A.2d 541 (2006).

Powers testified during the November 2, 2004 hearing that, although a urine sample was not as accurate as a blood sample or even a Breathalyzer test in determining blood alcohol content, a urine sample was "not so inaccurate as to be completely misleading . . . . [T]here is a greater potential for error, but it's not a yes-no type error." When asked whether he agreed with O'Brien's opinion that the urine tests were invalid and bore no relationship to the defendant's blood alcohol content at the time, Powers answered, "I would not agree with that. . . . I don't think there's any scientific basis for that conclusion."

During cross-examination, the defendant's attorney consistently attempted to have Powers admit to the fact that the urine sample did not provide an accurate reflection of the defendant's blood alcohol content because he had not completely voided prior to giving the samples. Powers answered, "That seems a reasonable statement, *assuming the underlying truth.* . . . I'm not accepting it as fact, but I—I do not disagree with Dr. O'Brien's conclusion *based on his acceptance of that hypothetical.*" (Emphasis added.)

The court found that "Powers has clearly indicated that there are problems that exist with urine tests . . . . What he also pointed out, though, was that the problems that are demonstrated in [O'Brien's August 17, 2004 letter] are based on a wholesale acceptance of the defendant's factual recitation. That's something you're going to have to convince the jury of. There's nothing that says that the state has to accept the defendant's point of view of what did I drink, when did I last drink, when did I last void, how much did I eat, how much

nonalcoholic intake did I have, other factors that might affect a urine sample. So, I think the state—based upon the report of Dr. Powers, the state is justified in saying, 'We're going to leave this up to a jury.' " The court subsequently denied the defendant's motion to dismiss.

A careful review of the record demonstrates that the court's factual findings in denying the defendant's motion to dismiss were not clearly erroneous. Therefore, the defendant's first claim fails.[5]

II

The defendant's next claim is that the court improperly denied his motion to disqualify and recuse prior to ruling on his motion to dismiss. Specifically, he claims that a reasonable person would have questioned Judge Driscoll's impartiality because of his participation in the pretrial agreement. We disagree.

Canon 3 (c) (1) (A) of the Code of Judicial Conduct provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might *reasonably* be questioned, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ." (Emphasis added.) This court in *State* v. *Ortiz*, 83 Conn. App. 142, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004), recently addressed our long accepted reasonable person standard. "[Canon 3 (c) (1)] of the Code of Judicial Conduct requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. The reasonableness standard

---

[5] The defendant also argues that the plea agreement was subject to contract law and was therefore enforceable. See *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997). Because neither the state nor the court addressed the potential unenforceability of the agreement as stated, the defendant's argument is unavailing.

is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Even in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority." (Citations omitted; internal quotation marks omitted.) Id., 150.

The defendant's motion to disqualify and recuse asserted that Judge Driscoll should not have presided over the hearing on the motions to strike and to quash because there was "a dispute of facts as to what was agreed upon in the in-chambers judicial pretrial in this matter on September 16, 2004." He further alleges that "[i]t is reasonable to assume that when the two attorneys disagree over what the pretrial agreement was and how the pretrial agreement is to be executed, the judge may be biased because he may have been prejudiced by 'off the record' information." The court found that the agreement itself was "quite clear." In denying the defendant's motion to disqualify and recuse, it stated that "if there's an agreement, that's the agreement, that's what's being enforced." Our review of the record reveals that there was no dispute over the agreement itself, as it was memorialized on the cover of the file; see footnote 3; but rather, the dispute concerned whether Powers agreed with O'Brien's opinion and whether Powers suggested reasonable doubt. This was the precise reason why Powers testified at the hearing. Letters that had been exchanged between counsel and sent to the court asserted a difference of opinion concerning whether the physicians agreed and whether Powers suggested reasonable doubt. The court heard testimony and found that the matter should proceed to trial.

The fact that Judge Driscoll attended the pretrial hearing, during which the agreement was made,[6] and later presided over the hearing on the defendant's motions, does not lead a reasonable person to question his impartiality. Our review of the record reveals no bias against the defendant on the part of Judge Driscoll, nor does it raise a reasonable question concerning his impartiality. See *State* v. *Webb*, 238 Conn. 389, 464, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). The defendant's claim thus fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] In his reply brief, the defendant cites *State* v. *Washington*, 39 Conn. App. 175, 664 A.2d 1153 (1995), for the proposition that "[a]ctive involvement by trial judges in plea negotiations has frequently been criticized. . . . This criticism is predicated on the dangers inherent in such activity. In the first place, judicial participation in plea negotiations is likely to impair the trial court's impartiality. The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement (and in the quick disposition of the case made possible by the bargain) and may therefore resent the defendant who rejects his advice." (Citation omitted; internal quotation marks omitted.) Id., 180–81. The defendant suggests that the court "not only had an appearance of a stake in the outcome of the hearing, he had an affirmative stake in the outcome" and that "Judge Driscoll was the person who suggested the pretrial agreement." The defendant offered no evidence, and we are unaware of any, to show that either of these statements are true. Therefore, we do not address his auxiliary argument.