RICHARD P. GIANNAMORE *v.*
DONALD E. SHEVCHUK
(AC 28058)

Bishop, Harper and Robinson, Js.

Argued January 16—officially released June 10, 2008

*William S. Palmieri*, for the appellant (plaintiff).

*Jane G. Beddall*, with whom was *Terence A. Zemetis*, for the appellee (defendant).

*Opinion*

ROBINSON, J. This appeal arises out of a malicious prosecution action brought by the plaintiff, Richard P. Giannamore, against the defendant, Donald E. Shevchuk. On appeal, the plaintiff claims that the trial court improperly set aside the jury's verdict and concluded that he had failed to establish that the defendant acted without probable cause to initiate criminal proceedings against him.[1] Additionally, the defendant claims, as alternate grounds for affirming the judgment of the court, that there was insufficient evidence to support the jury's findings that (1) he initiated the criminal proceedings against the plaintiff and (2) he acted with malice or an improper purpose other than bringing an offender to justice. We agree with the plaintiff and disagree with the defendant. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are necessary for our discussion. The plaintiff commenced a five

---

[1] In his statement of issues, the plaintiff set forth the following claims: (1) whether the jury found that he proved at trial that the defendant committed malicious prosecution; (2) whether the court properly submitted the issue of probable cause to the jury; (3) whether the court erred in finding that probable cause existed to arrest; (4) whether the court abused its discretion in directing the verdict; and (5) whether the court improperly set aside the verdict of the jury. We note that the court, in accordance with its decision on the motion to set aside the jury's verdict, granted the defendant's motion for a directed verdict. We therefore consider these claims together. Furthermore, because the plaintiff's first and second claims are subsumed in the broader question of whether the court improperly set aside the jury's verdict and concluded that he had failed to establish that the defendant acted without probable cause to initiate criminal proceedings against the plaintiff, we do not address them separately. See *State* v. *Olenick*, 98 Conn. App. 638, 640 n.1, 910 A.2d 1002 (2006), cert. denied, 281 Conn. 920, 918 A.2d 273 (2007).

count action against the defendant on March 5, 2001.[2] The operative complaint, dated March 22, 2006, set forth a single count of malicious prosecution. This action originated out of a contract dispute between the plaintiff, a self-employed painter, and the defendant, a public defender in the Bristol courthouse.

On August 22, 1995, the parties entered into two written contracts. The first was for the interior of the defendant's house. The plaintiff was to paint the interior walls, ceilings and trim work in exchange for $5000. The plaintiff acknowledged the receipt of a $3000 deposit with the balance due upon completion. The second contract required the plaintiff to paint the exterior of the house. The plaintiff accepted a $2000 deposit for the exterior contract.

The interior contract required the plaintiff to complete the painting of the interior ten days after all of the interior trim work had been installed by a different contractor. It further stated that the plaintiff was not responsible for time lost because materials had not arrived or been installed. By September 20, 1995, neither the interior nor the exterior painting had been completed. On that date, the parties executed a written amendment to the two August 22, 1995 contracts. The prior contracts remained in effect, but the two deposits were now applied exclusively to the interior painting contract, paying it in full. The plaintiff also acknowledged the receipt of an additional sum of money, approximately $1666. Ultimately, the interior painting

---

[2] The initial complaint alleged abuse of process, malicious prosecution, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., intentional infliction of emotional distress and negligent infliction of emotional distress. The court granted the defendant's motion to strike the CUTPA and intentional infliction of emotional distress counts. The court subsequently granted the defendant's motion for summary judgment with respect to the abuse of process and negligent infliction of emotional distress counts.

was never completed, and the exterior painting was never commenced.

In November, 1995, the defendant contacted Christopher Bartolotta, a state police trooper, regarding the painting of the house. Bartolotta advised him that his situation should be addressed as a civil matter in the court system. The defendant subsequently spoke with a prosecutor at the Bristol courthouse. The prosecutor advised the defendant to send the plaintiff a letter demanding the return of the money.[3]

On December 27, 1995, the defendant again contacted Bartolotta. Bartolotta took a statement from the defendant, reviewed certain documents and contacted the office of the state's attorney. In his written statement, the defendant alleged that the "total amount [the plaintiff] stole . . . by not doing the agreed work, not showing up and continually asking me for additionally money was $3666.00." As a result of his investigation, Bartolotta prepared an application for an arrest warrant. A prosecutor in the Bristol courthouse, where the defendant worked, reviewed and approved the arrest warrant application. It then was signed by a judge of the Superior Court. Neither the defendant's written statement nor Bartolotta's arrest warrant application mentioned the terms of the amended contract. Furthermore, the arrest warrant indicated that $3666 had been stolen: $2000 from the initial deposit on August 22, 1995, and the $1666 payment made on September 22, 1995.[4]

---

[3] The defendant testified that he sent the following letter to the plaintiff's address: "[P]lease return to me immediately the $3665 I gave you toward materials and payment for painting the outside of my house. If I do not hear from you within seven days from receipt of this letter, I will report your activity to all appropriate authorities and institute whatever action is appropriate and necessary." The address on the letter matched the plaintiff's address on the contract. The defendant further stated that he telephoned the plaintiff and recorded the text of the letter on the plaintiff's answering machine.

[4] The record reveals that the parties amended the contract on September 20, 1995, and that the plaintiff acknowledged the receipt of $1666 on that

On March 6, 1996, the plaintiff was arrested at his home for committing the crime of larceny in the third degree in violation of General Statutes § 53a-124. Incident to his arrest, the plaintiff was searched and a double edged knife was found on his person. As a result, the plaintiff also was charged with carrying a dangerous weapon in violation of General Statutes § 53-206 (a).

The plaintiff paid attorney John R. Williams $14,000 to represent him with respect to the pending criminal charges. The larceny case eventually was transferred from the Bristol courthouse to Hartford. That case was nolled and dismissed on September 1, 1998.

The plaintiff's malicious prosecution action was tried before the jury. At the conclusion of the plaintiff's case, the defendant moved for a directed verdict. After hearing argument, the court reserved its decision on the defendant's motion. The court submitted interrogatories to the jury as requested by the defendant. The jury returned a verdict in favor of the plaintiff and awarded the plaintiff a total of $39,000 in damages, subject to a setoff of $6665.

Following the jury's verdict, the defendant filed a motion to set aside, a motion for remittitur, a motion for a decision on the motion for a directed verdict and an application for a judicial determination of probable cause. On September 1, 2006, the court issued a memorandum of decision granting the motion to set aside the verdict.[5] The court concluded that "[b]ased on the undisputed facts . . . the plaintiff cannot sustain his burden of proving that the defendant lacked probable cause to bring his complaint to the police." The court reasoned that the plaintiff himself acknowledged that he took money from the defendant and never returned

date, not on September 22, 1995, as indicated in paragraph seven of the arrest warrant application.

[5] We note that the court never considered the defendant's motion for remittitur.

to the house. In the view of the court, these facts supported the defendant's reasonable belief that the plaintiff had taken more than $1000 and wrongfully refused to return it. Because the plaintiff had failed to prove that the defendant lacked probable cause, his claim for malicious prosecution likewise failed. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal, the plaintiff claims that the court improperly set aside the jury's verdict[6] and improperly concluded that he had failed to establish that the defendant acted without probable cause to initiate criminal proceedings. Although the plaintiff has briefed these claims separately, in our view, they are intertwined, with the latter being the key issue. Simply put, the dispositive issue is whether the court properly determined that the defendant had probable cause to initiate criminal proceedings.

To facilitate our discussion, it is appropriate to set forth the legal principles regarding the tort of malicious prosecution. "The interest in freedom from unjustifiable litigation is protected by actions for malicious prosecution and abuse of process. . . . In malicious prosecution cases . . . the emphasis is upon the misuse of

---

[6] "The standard of review governing our review of a trial court's denial of a motion to set aside the verdict is well settled. The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear abuse, we shall not disturb." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 32–33, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007); see also *Edmands* v. *CUNO, Inc.*, 277 Conn. 425, 452–53, 892 A.2d 938 (2006).

criminal . . . action as a means for causing harm. . . . The law supports the use of litigation as a social means for resolving disputes, and it encourages honest citizens to bring criminals to justice. Consequently the accuser must be given a large degree of freedom to make mistakes and misjudgments without being subject to liability. *On the other hand, no one should be permitted to subject a fellow citizen to prosecution for an improper purpose and without an honest belief that the accused may be found guilty.*" (Emphasis added.) W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 119, pp. 870–71. Indeed, our Supreme Court expressly has recognized that the "law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests. It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of the criminal law. 1 F. Harper & F. James, Torts (1956) § 4.11." *McHale* v. *W.B.S. Corp.*, 187 Conn. 444, 447–48, 446 A.2d 815 (1982); see generally *Rioux* v. *Barry*, 283 Conn. 338, 343–49, 927 A.2d 304 (2007).

The elements of malicious prosecution are well established. "An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale* v. *W.B.S. Corp.*, supra, 187 Conn. 447; see also 52 Am. Jur. 2d 145, Malicious Prosecution § 8 (2000); D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 161, p. 430. Our

Supreme Court has described these elements of the tort as the " 'stringent requirements' . . . ." *Gallo* v. *Barile*, 284 Conn. 459, 475, 935 A.2d 103 (2007); 52 Am. Jur. 2d 143, supra, § 5 ("Actions for malicious prosecution are not favored by the courts. Thus, a malicious prosecution action is subject to limitations that are more stringent than those surrounding other kinds of actions, and recovery is allowed only if the requirements have been fully complied with.").

The focus of our inquiry is the third element of malicious prosecution; that is, whether the defendant acted without probable cause.[7] "Probable cause has been defined as the knowledge of facts sufficient to justify a reasonable [person] in the belief that he [or she] has reasonable grounds for prosecuting an action. . . . Mere conjecture or suspicion is insufficient. . . . Moreover, belief alone, no matter how sincere it may be, is not enough, since it must be based on circumstances which make it reasonable. . . . Although want of probable cause is negative in character, the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding." (Citations omitted; internal quotation marks omitted.) *Mulligan* v. *Rioux*, 229 Conn. 716, 739, 643 A.2d 1226 (1994), on appeal after remand, 38 Conn. App. 546, 662 A.2d 153 (1995). It is well established in our jurisprudence that "[t]he existence of probable cause is an absolute protection against an action for malicious prosecution . . . ." (Internal quotation marks omitted.) *Vandersluis* v. *Weil*, 176 Conn. 353, 356, 407 A.2d 982 (1978); *Hebrew Home & Hospital* v. *Brewer*, 92 Conn. App. 762, 767, 886 A.2d 1248 (2005).

---

[7] We recently have described this element as "the gravamen of the tort." *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 577, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006); see also *McMahon* v. *Florio*, 147 Conn. 704, 706, 166 A.2d 204 (1960) ("[t]o maintain an action for malicious prosecution, the plaintiff must prove want of probable cause").

Our Supreme Court has instructed that "[w]hether the facts are sufficient to establish the lack of probable cause is a question ultimately to be determined by the court, but when the facts themselves are disputed, the court may submit the issue of probable cause in the first instance to a jury as a mixed question of fact and law." *DeLaurentis* v. *New Haven*, 220 Conn. 225, 252–53, 597 A.2d 807 (1991); see also *Cosgrove Development Co.* v. *Cafferty*, 179 Conn. 670, 671, 427 A.2d 841 (1980); *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 35, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007). In other words, the role of the jury is to find the underlying facts pertaining to the question of the lack of probable cause. The issue of probable cause in a malicious prosecution, however, ultimately presents a question of law that must be determined by the court. *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007); *Vandersluis* v. *Weil*, supra, 176 Conn. 356; *McMahon* v. *Florio*, 147 Conn. 704, 707, 166 A.2d 204 (1960) ("[w]hether particular facts constitute probable cause is a question of law"). Accordingly, our review is plenary. *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 94.

The plaintiff testified that on August 22, 1995, he entered into a contract with the defendant and accepted a $3000 deposit to paint the interior of the defendant's home and an additional $2000 deposit to paint the outside of the defendant's home. He further testified that on September 20, 1995, the parties amended their earlier agreement.[8] In the amended agreement the parties agreed that the $5000 that previously had been paid to the plaintiff would be applied fully to the painting of the interior of the home. Furthermore, on that date, the

---

[8] The plaintiff later testified that the parties had entered into two contracts, one for the interior and one for the exterior. Whether the parties had entered into one contract or two is not a significant factor to our analysis.

plaintiff received additional money from the defendant. The plaintiff explained that he needed the additional money "[b]ecause of the holdups on the job. And if [the defendant] wanted me to keep going, I needed to pay the guy that was with me at the time."[9] On direct examination, the plaintiff stated that he stopped working on the defendant's home in mid-September, 1995.

During cross-examination, the plaintiff acknowledged that he had completed approximately 85 percent of the interior painting of the second floor and had not done any work with respect to the outside of the home. The plaintiff then admitted that he did not return to the defendant's home after September 20, 1995, the date that he signed the amendment to the contract. The plaintiff further stated that from September 20 through 30, 1995, he worked at a different location and never returned to the defendant's home.

During his testimony, the defendant stated that the plaintiff threatened to stop working and place a lien on the house if the defendant did not pay him additional money. He further testified that the parties communicated several times between September 20 and 27, 1995. On October 3, 1995, the defendant inspected the house and determined that no additional work had been done and spoke with the plaintiff. The defendant stated that the plaintiff again requested the rest of the money from the contract to complete the work. The defendant testified that he refused to pay the remainder of the money and told the plaintiff that he would take care of completing the work on the house.

At the outset of our analysis, we point out the interactions of the various standards of review applicable to the plaintiff's claim. The ultimate question before us is

---

[9] The plaintiff testified that the trim work for the interior of the house was not being installed in a timely manner. As a result, the plaintiff was unable to maintain his schedule.

whether the trial court properly determined, as a matter of law, that the defendant had probable cause to initiate criminal proceedings against the plaintiff. As we previously have explained, we review that conclusion under the plenary standard of review. See *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 281 Conn. 94. We are mindful, however, that the facts underlying that conclusion present a question for the jury.[10] See *DeLaurentis* v. *New Haven,* supra, 220 Conn. 252–53. In this instance, the record reveals that the court did not submit interrogatories to the jury regarding predicate facts relating to probable cause. Rather, the court submitted the ultimate legal issue to the jury. Although the court was not bound by the jury's determination that the defendant had no probable cause, the record supports the jury's implicit finding that the defendant and the plaintiff had an ongoing dispute regarding the plaintiff's services and the defendant's payment for them.

Although the parties agree that the defendant paid the plaintiff an additional sum of money on September 20, 1995, there was conflicting testimony as to the purpose of that payment. The plaintiff testified as to the significant delays that disrupted his schedule and resulted in the need for additional money to pay his employee. Additionally, there was testimony that the defendant was told that disputes regarding contractual matters are civil actions, not criminal matters. Both Bartolotta and the defendant testified to that effect. Furthermore, both parties were aware that this matter constituted a contractual dispute over the work done by the plaintiff and the amount of money paid by the defendant. Significantly, the defendant was aware that

[10] In its memorandum of decision, the court stated: "Based on the undisputed facts in this case, the plaintiff cannot sustain his burden of proving that the defendant lacked probable cause to bring his complaint to the police." We disagree that the facts in the present case were undisputed.

the plaintiff required payment of additional money before he would complete the work. Simply put, there was ample evidence in the record from which the jury could find that the defendant was aware that the plaintiff believed that he was entitled to the additional money and therefore lacked the intent to deprive the defendant of his money wrongfully.[11]

Under these facts and circumstances, we conclude, as a matter of law, that a reasonable person in the position of the defendant would not believe that he had grounds for prosecuting a criminal action. We further conclude that the court improperly determined that the plaintiff failed to satisfy the requirement of proving lack of probable cause and improperly set aside the jury's verdict.

## II

We now consider the defendant's alternate grounds for affirming the judgment of the court. The defendant claims that there was insufficient evidence to support the jury's findings that (1) he initiated the criminal proceedings against the plaintiff and (2) he acted with malice or an improper purpose other than bringing an offender to justice. We are not persuaded by either of the defendant's claims.

As a preliminary matter, we set forth the applicable standard of review. "An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of an appellate court is to review, and not to retry, the proceedings of the trial court. . . . Further, we are authorized to reverse or modify the decision of the trial court only if we determine that the factual findings are clearly erroneous in view of the evidence and pleadings in the

---

[11] "A specific intent to deprive or to misappropriate is an essential element of larceny." (Internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 35, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006).

whole record, or that its decision is otherwise erroneous in law." (Internal quotation marks omitted.) *Anderson* v. *Whitten*, 100 Conn. App. 730, 739, 918 A.2d 1056 (2007).

We previously have stated: "[I]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Internal quotation marks omitted.) *Davis* v. *Manchester Health Center, Inc.*, 88 Conn. App. 60, 69–70, 867 A.2d 876, cert. denied, 273 Conn. 936, 875 A.2d 543 (2005). Guided by these principles, we consider each of the defendant's claims in turn.

A

The defendant first claims that there was insufficient evidence to support the jury's finding that he initiated the criminal proceedings against the plaintiff. Specifically, he argues that he did nothing more than supply private assistance to law enforcement officials. We disagree with the defendant.

Our Supreme Court has stated: "The policy of encouraging private citizens to assist in law enforcement is vindicated, in the law of malicious prosecution, by providing a limited immunity in the form of the first element that the plaintiff must prove to maintain his cause of action. A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure

of any kind to bear upon the public officer's decision to commence the prosecution. . . . But a private person has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer. *In such a case, if the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *McHale* v. *W.B.S. Corp.*, supra, 187 Conn. 448; *LeFebvre* v. *Zarka*, 106 Conn. App. 30, 36, 940 A.2d 911 (2008).

There was evidence in the record to support the jury's finding that the defendant initiated the criminal proceeding against the plaintiff. "A person is deemed to have initiated a proceeding if his direction or request, or pressure of any kind by him, was the determining factor in the officer's (or prosecutor's) decision to commence the prosecution." (Internal quotation marks omitted.) *Fatone* v. *DeDomenico*, 161 Conn. 576, 577, 290 A.2d 324 (1971). The defendant went to Bartolotta, then the prosecutor and then back to Bartolotta seeking the prosecution of the plaintiff. The jury reasonably could have found that the defendant's persistence was a determinative factor in the decision to commence the prosecution of the plaintiff.

Additionally, the jury reasonably could have found that the defendant failed to make a full and truthful disclosure of the actions of the plaintiff. The defendant failed to mention to Bartolotta the amended contract of September 20, 1995. His written statement indicated that the plaintiff had stolen not only the $1666 from the September 20, 1995 payment, but also the initial $2000 that had been used as a deposit for the exterior in the original contract of August 22, 1995. The defendant failed, however, to inform Bartolotta that the original contract had been amended subsequently and that the

$2000 had been applied to the interior painting, not to the exterior. The defendant also failed to disclose the fact that the delays of the painting were a result of factors outside of the plaintiff's control, namely, the lack of progress with respect to the interior trim work. We agree with the statement of the United States Court of Appeals for the Eighth Circuit: "Where the informant knowingly gives false or misleading information or in any wise directs or counsels officials in such a way so as to actively persuade and induce the officer's decision, then the informant may still be held liable." *White* v. *Chicago, Burlington & Quincy Railroad,* 417 F.2d 941, 943 (8th Cir. 1969). There was sufficient evidence in the record for the jury to conclude that the defendant insisted on the prosecution of the plaintiff and provided misleading information to the investigating state trooper. Accordingly, we cannot conclude that the jury's finding was clearly erroneous.

## B

The defendant next claims that there was insufficient evidence to support the jury's finding that he acted with malice or an improper purpose other than bringing an offender to justice. Specifically, he argues that there was no evidence in the record that he acted with an improper purpose. We disagree.

Our Supreme Court has stated: "In a malicious prosecution action, the defendant is said to have acted with malice if he [or she] acted primarily for an improper purpose; that is, for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based . . . ." (Citation omitted; internal quotation marks omitted.) *Mulligan* v. *Rioux,* supra, 229 Conn. 732; see also 3 Restatement (Second), Torts, Malicious Prosecution § 668, p. 438 (1977). Furthermore, we note that "[m]alice may be inferred from lack of probable cause." *Falls Church Group, Ltd.* v. *Tyler,*

*Cooper & Alcorn, LLP*, supra, 281 Conn. 94. If the evidence supports a finding of a lack of probable cause, then the fact finder reasonably may conclude that the defendant acted with malice. See *Mulligan* v. *Rioux*, supra, 746.

Our review of the record reveals ample evidence from which the jury reasonably could have concluded that the defendant acted with a purpose other than bringing a criminal offender to justice. The use of criminal proceedings to recover a debt, even money lawfully owed to an accuser, is improper and subjects a person to liability for malicious prosecution. See 3 Restatement (Second), supra, § 668, comment (g). The jury was free to find, on the basis of the evidence, that the defendant used criminal proceedings not to bring the plaintiff to justice, but to recover money from a contractual dispute. We cannot conclude that the finding that the defendant acted with malice or an improper purpose other than bringing an offender to justice, was clearly erroneous.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.