MIECZYSLAW KARWOWSKI ET AL. *v.* ANDREW
FARDY ET AL.
(AC 30220)

Flynn, C. J., and Harper and Mihalakos, Js.

Argued October 26—officially released December 22, 2009

*Donald J. O'Brien,* for the appellant (named plaintiff).

*Gerald P. Dwyer, Jr.,* with whom was *Christopher R. Perry,* for the appellees (defendants).

*Opinion*

FLYNN, C. J. The plaintiff Mieczyslaw Karwowski[1] appeals from the summary judgment rendered by the trial court in favor of the defendants Andrew Fardy and Travelers Indemnity Company (Travelers) in this malicious prosecution case. On appeal, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment, failing to view the evidence in the light most favorable to him as the nonmoving party and improperly ruling that there were no material facts in dispute. We affirm the judgment of the trial court.

Jadwiga Karwowski, the wife of the plaintiff, owned a building located at 73-75 Broad Street in New Britain. The building housed a bar, called the Copper Penny, and twelve rental apartments. On three separate dates in 1994, September 26, October 9 and October 20, fires broke out in the building in several different areas. Investigators from Travelers, the insurer of the building,

---

[1] Jadwiga Karwowski also was a plaintiff before the trial court. Before the entry of judgment, however, she withdrew her claims, leaving Mieczyslaw Karwowski as the sole plaintiff. We therefore refer to Mieczyslaw Karwowski as the plaintiff in this opinion.

and the authorities concluded that arson was the cause of the fires on all three dates; this conclusion is not contested by the plaintiff. Fardy, one of the investigators from Travelers, worked closely with the New Britain police department and the arson unit of the state police in investigating these fires. Pursuant to General Statutes § 38a-318,[2] on November 10, 1994, the office

[2] General Statutes § 38a-318 provides: "(a) Any authorized agency may in writing request any insurance company to release information relative to any investigation it has made concerning a loss or potential loss due to fire of suspicious or incendiary origin which shall include but not be limited to: (1) An insurance policy relative to such loss, (2) policy premium records, (3) history of previous claims, and (4) other relevant material relating to such loss or potential loss.

"(b) If any insurance company has reason to suspect that a fire loss to its insured's real or personal property was caused by incendiary means, the company shall furnish any authorized agency with all relevant material acquired during its investigation of the fire loss, cooperate with and take such action as may be requested of it by the authorized agency and permit any person ordered by a court to inspect any of its records pertaining to the policy and the loss. Such insurance company may request any authorized agency to release information relative to any investigation it has made concerning any such fire loss of suspicious or incendiary origin.

"(c) No insurance company, authorized agency or person who furnished information on behalf of such company or agency, shall be liable for damages in a civil action or subject to criminal prosecution for any oral or written statement made or any other action taken that is necessary to supply information requested pursuant to this section, unless there is fraud, actual malice or conduct relating to the release of such information which constitutes a criminal act.

"(d) Except as provided in subsection (h) of this section, any authorized agency receiving any information furnished pursuant to this section shall hold the information in confidence until such time as its release is required pursuant to a criminal or civil proceeding.

"(e) Any authorized agency personnel may be required to testify as to any information in the agency's possession regarding the fire loss of real or personal property in any civil action in which any person seeks recovery under a policy against an insurance company for the fire loss.

"(f) For the purposes of this section, 'authorized agency' means: (1) The State Fire Marshal or the local fire marshal when authorized or charged with the investigation of fires at the place where the fire actually took place; and (2) the Insurance Commissioner.

"(g) For the purposes of this section, 'insurance company' shall include organizations issuing insurance policies in this state pursuant to the provisions of section 38a-328.

"(h) Any authorized agency provided with information pursuant to subsec-

of the fire marshal of New Britain (fire marshal) sent a letter to Fardy requesting all records from Travelers related to the fires. Travelers sent approximately 10,000 pages to the fire marshal in response to the letter. Among the reports subsequently turned over to the authorities was an unsigned and undated document known as the "motive document," which had been prepared for Travelers by an outside attorney working on Travelers' behalf and which detailed possible motives that the plaintiff might have had for starting the fires. This document likely was prepared approximately ten months after the fires. The New Britain police department prepared a forty-four page arrest warrant application for the plaintiff's arrest, in part using information contained in the motive document. After reviewing the warrant application, a judge of the Superior Court found probable cause to arrest the plaintiff on charges of arson in the first degree and issued a warrant for his arrest, which was successfully executed in December, 1995.

Travelers then brought a civil case against the plaintiff and Jadwiga Karwowski, alleging in relevant part that the plaintiff tortiously had interfered with the insurance contract issued by Travelers by intentionally causing the building fires. The jury found in favor of Travelers as against the plaintiff and awarded Travelers $133,847.94. The jury, however, also found that Jadwiga Karwowski had not been involved in the fires, which meant that Travelers was required to pay her insurance claim. Travelers appealed from that judgment, but, during the appeal process, it reached a settlement with the

tion (a) or (b) of this section, may, in furtherance of its own purposes, release any information in its possession to any other authorized agency.

"(i) The provisions of this section shall apply to fire losses occurring on or after October 1, 1979."

In 2004, subsection (f) was amended. That change is not relevant to the present appeal. For simplicity, all references to § 38a-318 are to the current revision.

Karwowskis, agreeing to pay to Jadwiga Karwowski $500,000 and agreeing to the opening and vacating of the judgment against the plaintiff. On March 8, 2000, the court approved the settlement, and Travelers withdrew the action against the plaintiff, and the judgment against the plaintiff was vacated.

Shortly thereafter, on August 16, 2000, the criminal charges against the plaintiff were nolled and ultimately dismissed. On July 18, 2003, the plaintiff filed the present action against the defendants, alleging malicious prosecution, and the defendants set forth several special defenses, including a defense that their communications with the authorities were privileged. On July 25, 2008, the court granted the defendants' motion for summary judgment, concluding that the plaintiff had offered no evidence of malice or lack of probable cause and that the defendants' special defense of privilege was applicable pursuant to § 38a-318 (c). The plaintiff now appeals from the summary judgment rendered by the court. Additional facts will be set forth as necessary.

Initially, we set forth our standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Zulick* v. *Patrons Mutual Ins. Co.*, 287 Conn. 367, 372, 949 A.2d 1084 (2008).

"[A] party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate

the existence of a genuine issue of material fact. . . . [T]ypically, [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Internal quotation marks omitted.) *Tuccio Development, Inc.* v. *Neumann*, 111 Conn. App. 588, 594, 960 A.2d 1071 (2008).

When reviewing the trial court's decision to grant a motion for summary judgment, "we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Zulick* v. *Patrons Mutual Ins. Co.*, supra, 287 Conn. 372.

On appeal, the plaintiff claims that the court acted improperly in granting the defendants' motion for summary judgment when it failed to view the evidence in the light most favorable to the nonmoving party and incorrectly found that there were no material facts in dispute. He argues that one particular document, the motive document, which was turned over to the authorities by Travelers, contained "omissions and inaccurac[ies]," which the defendants knew would be used by the police to secure the arrest of the plaintiff. Specifically, the plaintiff argues that "at the time of the . . . attorney['s] writing of the [m]otive [d]ocument, the defendants were aware that the document would be

used to establish motive for the arrest of the Kar-wowskis for arson . . . ." The plaintiff contends that the turning over of this document to the authorities demonstrated malice on the part of the defendants and that malice negates any protection afforded under § 38a-318 (c). We are not persuaded by the plaintiff's arguments.

We begin our analysis by setting forth the legal principles regarding the tort of malicious prosecution. "The interest in freedom from unjustifiable litigation is protected by actions for malicious prosecution and abuse of process. . . . In malicious prosecution cases . . . the emphasis is upon the misuse of criminal . . . action as a means for causing harm. . . . The law supports the use of litigation as a social means for resolving disputes, and it encourages honest citizens to bring criminals to justice. Consequently the accuser must be given a large degree of freedom to make mistakes and misjudgments without being subject to liability. On the other hand, no one should be permitted to subject a fellow citizen to prosecution for an improper purpose and without an honest belief that the accused may be found guilty. . . . Indeed, our Supreme Court expressly has recognized that the law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests. It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of the criminal law." (Citation omitted; internal quotation marks omitted.) *Giannamore* v. *Shevchuk*, 108 Conn. App. 303, 309–10, 947 A.2d 1012 (2008).

To establish the tort of malicious prosecution, a plaintiff must prove: "(1) the defendant initiated or procured

the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." (Internal quotation marks omitted.) Id., 310. If a plaintiff is unable to prove any element, his claim, necessarily, fails.

In this case, the court found that the plaintiff had failed to rebut the defendants' proof, submitted with their motion for summary judgment, that they had not acted without probable cause and that they had not acted with malice in turning over the motive document to the authorities. The court further found that because there was no evidence on which a fact finder rationally could find that the defendants had acted with malice, the protection afforded pursuant to § 38a-318 was applicable to provide them immunity from the plaintiff's claim of malicious prosecution. The plaintiff challenges each of these conclusions on appeal, focusing primarily on the malice element, likely because it would remove the immunity protections of § 38a-318 (c) afforded to insurance companies.

The defendants argue that the court properly concluded that the plaintiff had not rebutted their proof that the four elements of the malicious prosecution claim could not be proven by the plaintiff. They further argue that summary judgment especially was appropriate in this case because they were required by operation of law to turn over the motive document to the authorities and, therefore, are immune from a claim of malicious prosecution absent some proof of maliciousness or fraud, of which there is none. See General Statutes § 38a-318 (c).[3] They also point out that the plaintiff does not contend that the allegations in the motive

---

[3] The plaintiff does not allege that the defendants acted fraudulently.

documents are false but, merely, that he believes the document is incomplete or misleading. We agree with the defendants.

Because § 38a-318 (c) provides immunity to an insurer that turns over information in response to a letter issued by the authorities except when there is fraud or malice on the part of the insurer, and malice also is one element of the malicious prosecution cause of action, we will focus our analysis on whether the plaintiff demonstrated the existence of an issue of disputed material fact by rebutting the defendants' proof that they had no malicious intent in turning over the motive document to the authorities but, merely, were complying with the law. See *Gianetti* v. *Health Net of Connecticut, Inc.*, 116 Conn. App. 459, 469, 976 A.2d 23 (2009) (in opposing motion for summary judgment, plaintiff must present concrete evidence demonstrating existence of disputed material fact, absence of responsive evidentiary facts or substantial evidence outside of pleadings to rebut defendant's proof is fatal to plaintiff).

Section 38a-318 (b) requires an insurance company that suspects that a fire was caused by incendiary means to turn over "all relevant material acquired during its investigation of the fire loss . . . ." Section 38a-318 (a) permits any authorized agency to request in writing that an insurance company turn over "information relative to any investigation [the insurance company] has made concerning a loss or potential loss due to fire of suspicious or incendiary origin . . . ." Section 38a-318 (c) provides that the insurance company or a person acting on its behalf, shall not "be liable for damages in a civil action . . . for any oral or written statement made or any other action taken that is necessary to supply information requested pursuant to this section, unless there is fraud, actual malice or conduct relating to the release of such information which constitutes a criminal act."

In this case, there is no dispute that the fires at issue were suspicious in nature and intentionally set. Accordingly, pursuant to § 38a-318 (b), the defendants were required to turn over all relevant material acquired during their investigation. Additionally, the fire marshal sent a letter requesting the release of all relevant information from the defendants pursuant to § 38a-318 (a). Clearly, the defendants had a statutory duty to turn over all relevant documents related to these fires. The record reveals that they turned over approximately 10,000 pages of material.

Although the plaintiff contends that the motive document should not have been turned over because it did not exist at the time the fire marshal requested the documents, but may have been created approximately ten months later,[4] we can discern nothing in the statute that would limit the required disclosure to documents created within a certain time period or to those documents in existence only at the time the request was made. Furthermore, we think such a limitation would be incongruous in light of the purpose of the statute, which is to require insurance companies to share with the authorities all relevant information connected to suspicious fires. Furthermore, to remove the protections of the statute from the defendants, the plaintiff would need to provide something more than a bare allegation that the release of the motive document was malicious.

The defendants hired an outside attorney to provide advice on the insurance claim filed by Jadwiga Karwowski and to help them prepare for a trial related to the insurance coverage. In response, that attorney prepared a document, the motive document, as "a summation of [his] investigation with regard to motive [for setting the fires]." This document was presented to the defendants,

---

[4] The document was not dated.

who, in turn, forwarded it to the authorities as part of the required § 38a-318 disclosure. The plaintiff makes no claim that the document contained false information; rather, he complains that the document is incomplete and that he does not agree with the economic analysis and conclusions reached by the investigating attorney. Further, he complains that the police used much of this document in their warrant application and that this document provided the only information on motive in the arrest warrant application. However, the defendants cannot be held responsible for the manner in which the police drafted the warrant application for the plaintiff's arrest. There is no evidence that the defendants drafted the application or that they somehow directed the police investigation or stopped the police from developing their own theories as to motive. Here, the defendants were required, pursuant to § 38a-318 (a) to turn over "information relative to any investigation it has made concerning a loss . . . due to fire of a suspicious or incendiary origin"; and, pursuant to § 38a-318 (b) of that statute, to turn over "all relevant material acquired during its investigation of the fire loss . . . ." We conclude that the motive document, which undeniably was a document developed as "a summation of [an attorney's] investigation with regard to motive," reasonably was included by the defendants as part of the necessary disclosure under § 38a-318. The record reveals nothing that could be considered malicious in the disclosure of this document. Accordingly, the protections afforded a complying insurance company under § 38a-318 (c) apply in this case to bar the plaintiff's claim of malicious prosecution.

The judgment is affirmed.

In this opinion the other judges concurred.