566 So.2d 331 (1990)
M. David EPSTEIN and Stacy Epstein, His Wife, Appellants,
v.
HARTFORD CASUALTY INSURANCE COMPANY, a Foreign Corporation, Appellee.
No. 90-501.
District Court of Appeal of Florida, First District.
August 24, 1990.
*332 Harris Brown and Reginald Luster of Mathews, Osborne, McNatt & Cobb, P.A., Jacksonville, for appellants.
Karen K. Cole of Boyd & Jenerette, P.A., Jacksonville, for appellee.
ALLEN, Judge.
This is an appeal by M. David Epstein and Stacy Epstein, plaintiffs below, from a summary final judgment in favor of appellee, Hartford Casualty Insurance Company (Hartford), in a suit for recovery under a homeowner's insurance policy. Finding that the language used in the exclusion from coverage was ambiguous and susceptible to interpretation in favor of coverage under the facts of this case, we reverse the summary final judgment in favor of Hartford.
The material facts are not in dispute. Hartford issued a homeowner's policy to the Epsteins covering their residence at 4085 Cumbrian Gardens Lane in Jacksonville. The policy indicated that the "residence premises covered by [the] policy" were located at the Epsteins' Cumbrian Gardens Lane address. The term "residence premises" was defined by the policy as follows:
"[R]esidence premises" means:
a. the one family dwelling, other structures, and grounds; or
b. that part of any other building;
Where you reside and which is shown as the residence premises in the Declarations.
Residence premises also means a two family dwelling where you reside in at least one of the family units and which is shown as the residence premises in the Declarations.
Under "Coverage C" of the policy, Hartford indicated that the policy "cover[ed] personal property owned or used by an insured while it [was] anywhere in the world." One of the perils specifically listed as coming under Coverage C was theft. The policy provisions listing the peril of theft, and setting forth an exclusion to coverage therefor, provided, in pertinent part, as follows:
Theft, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.
.....
This peril does not include loss caused by theft that occurs off the residence premises of ... property while at any other residence owned, rented to, or occupied by an insured, except while an insured is temporarily living there.
The policy did not define the term "residence." During the policy period, personal property owned by the Epsteins was alleged to have been stolen from a garage at 4129 Huntington Forest Boulevard in Jacksonville. The Huntington Forest Boulevard property was rental property owned by the Epsteins. It included a dwelling house, but the Epsteins had never lived there.
Because the Epsteins had never lived in the Huntington Forest Boulevard house, they did not consider it to be a "residence" under the policy exclusion set forth above, so they made a claim under Coverage C of the policy for their alleged loss. When Hartford denied the claim, in reliance upon a different construction of the language in the policy exclusion, the Epsteins filed suit.
We first observe that the record before us does not reveal whether Hartford has agreed that the theft did, in fact, occur. However, for purposes of Hartford's motion for summary judgment, any dispute over whether the theft occurred was not material, because it was Hartford's position that, even if the theft had occurred, Hartford was not liable. Alternatively, for purposes of a motion for summary judgment by the Epsteins, any dispute over whether the theft had occurred would be a material factual dispute precluding summary judgment, because proof of the theft would be an essential element of their right to recovery.
When material facts surrounding a controversy are not in dispute, it is uniquely within the province of the court to give a contract its proper construction. If a contract is ambiguously worded, it is the responsibility *333 of the court to resolve the ambiguity as a matter of law. On the other hand, if the language of a contract is unambiguous and not subject to conflicting inferences, it is the court's responsibility to give the contract its clearly intended construction. Ellenwood v. Southern United Life Ins. Co., 373 So.2d 392 (Fla. 1st DCA 1979).
The dispositive issue presented in this case is whether the policy exclusion is ambiguous to the extent that it is susceptible of two different meanings, with one allowing coverage and the other excluding coverage. In addressing a similar issue under an insurance policy, we recently said:
Where a term in an insurance contract is ambiguous, the courts will construe the policy language in favor of the insured and against the insurer. Triano v. State Farm Mutual Automobile Insurance Company, 15 FLW D1793 [565 So.2d 748] (Fla. 3d DCA July 20, 1990); Herring v. First Southern Insurance Company, 522 So.2d 1066 (Fla. 1st DCA 1988); Davis v. Nationwide Life Insurance Company, 450 So.2d 549 (Fla. 5th DCA 1984); Rowland v. National States Insurance Company, 295 So.2d 335 (Fla. 1st DCA 1974). Where the language is susceptible of two different interpretations, the interpretation sustaining coverage will be adopted. Herring at 1068. In keeping with this principle, terms of exclusion are to be narrowly construed. Triano; Hartford Accident and Indemnity Company v. Phelps, 294 So.2d 362 (Fla. 1st DCA 1974). Where the provision is not ambiguous, however, there is no occasion for employing the rule of construction against the insurer, and the court simply applies the plain meaning of the provision. Home Indemnity Company v. Alday, 213 So.2d 13 (Fla. 1st DCA 1968).
Quality Imports, Inc. v. St. Paul Fire & Marine Ins. Co., 566 So.2d 293 (Fla. 1st DCA 1990).
After carefully examining the policy exclusion relied upon by Hartford, and doing so in the context of the entire policy, we conclude that the exclusion is susceptible of two different interpretations. Under one interpretation, the term "residence" simply means any dwelling house, apartment, mobile home or similar structure or facility primarily intended to serve as a dwelling. This, of course, is the interpretation urged by Hartford. Under another interpretation, that urged by the Epsteins, the term "residence" applies to a structure or facility actually used by the insureds as their dwelling, or as one of their dwellings. The latter interpretation, like the first, is reasonable. We would be less likely to find the latter interpretation to be reasonable if the term "residence premises" had not specifically been defined as being a "dwelling where you reside." This definition, coupled with Hartford's failure to define the term "residence," naturally leads one to believe that the definition of "residence" might well be partially encompassed within the definition of "residence premises." Further, the expansive phrase "personal property owned ... by an insured ... anywhere in the world," also naturally leads one to give a narrower construction to exclusions from coverage which follow.
We are also persuaded to find the term "residence" ambiguous because of the term's history in the law. A passage from Corpus Juris Secundum states:
The word "residence" has been construed by the courts in many connections, and, as is indicated by the reported cases, the term has been involved in many controversies, and has been the source of much confusion [footnotes omitted].
77 C.J.S. Residence at p. 289 (1972). One court wrote,
[T]he word is like a slippery eel, and the definition which fits one situation will wriggle out of our hands when the word is used in another context or in a different sense.
State v. Tustin, 322 S.W.2d 179, 180 (Mo. Ct. App. 1959). Hartford could as easily have used a more precise term, but it failed to do so. The result of this failure is uncertainty as to the application of the policy exclusion to the facts of this case.
*334 Because the language used in the policy exclusion was ambiguous and susceptible of interpretation in favor of coverage under the facts of this case, the trial court erred in granting summary final judgment for Hartford. Accordingly, we reverse the summary final judgment and remand this cause to the trial court for further proceedings in accordance with this opinion.
WENTWORTH and NIMMONS, JJ., concur.