JOHN M. ZULICK ET AL. *v.* PATRONS MUTUAL
INSURANCE COMPANY
(SC 18030)

Rogers, C. J., and Norcott, Katz, Palmer and Schaller, Js.

Argued March 10—officially released June 24, 2008

*Howard B. Schiller*, for the appellants (plaintiffs).

*Joel J. Rottner*, with whom was *Steven B. Ryan*, for the appellee (defendant).

*Opinion*

ROGERS, C. J. The plaintiffs, John M. Zulick and Barbara Y. Zulick,[1] brought this action against the defendant, Patrons Mutual Insurance Company, alleging that the defendant had breached the terms of an insurance policy providing for coverage for loss of the plaintiffs' personal property and had violated the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The trial court rendered summary judgment in favor of the defendant on all of the plaintiffs' claims, and the plaintiffs then filed this appeal.[2] The plaintiffs claim that the trial court improperly determined that the loss of their property fell within a coverage limitation for "personal property usually on [the] residential premises of an [i]nsured other than the [i]nsured premises . . . ." We affirm the judgment of the trial court.

The trial court found the following undisputed facts. The plaintiffs owned and resided in a residence at 348 Lipps Road in Ashford. They also owned property at 296 Westford Hill Road in Ashford, which is adjacent to the property at 348 Lipps Road. They leased out a residence on the property at 296 Westford Hill Road and kept certain personal property in a barn and carriage shed located on the property. On August 27, 2002, a fire destroyed the barn and carriage shed, causing a loss of the plaintiffs' personal property in the amount of $39,084.43.

---

[1] John M. Zulick died on November 3, 2004. Thereafter, the trial court granted a motion to substitute Barbara Y. Zulick, executrix of his estate, as the plaintiff. For convenience, we refer to John M. Zulick and Barbara Y. Zulick as the plaintiffs.

[2] The plaintiffs appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The defendant had issued an insurance policy to the plaintiffs providing coverage for the loss or damage to the property at 348 Lipps Road, including related private structures and personal property. The policy provided: "We cover personal property owned by or in the care of an [i]nsured. Coverage for personal property usually on residential premises of an [i]nsured other than the [i]nsured premises is limited to 10 percent of the [c]overage C limit." The coverage C limit of the policy was $84,700. The plaintiffs filed a claim under the policy for the loss of their personal property in the barn and carriage shed. The defendant responded that the personal property had been located on "residential premises other than the insured premises" and offered to pay the plaintiffs 10 percent of the coverage C limit, or $8470.[3]

Thereafter, the plaintiffs brought this action alleging that the defendant had breached the insurance policy and had violated CUTPA and CUIPA. The plaintiffs claimed that, because the destroyed barn and carriage shed had been "located adjacent to the principal residence" at 348 Lipps Road and were "neither used for nor suitable for residential use," the coverage limitation for personal property kept on residential premises did not apply. The defendant raised as a special defense that, because the personal property had been located on the separately insured property at 296 Westford Hill Road, the personal property was on "residential premises other than the insured premises" and the coverage limitation applied. Therefore, the defendant claimed, coverage was limited to 10 percent of the coverage C limit. The plaintiffs filed a motion for partial summary judgment on the defendant's special defense claiming that, because the policy language was ambiguous, it

[3] The trial court found that the defendant offered the plaintiffs $8470 on the loss. The plaintiffs claim that the defendant paid them $8893.50. The reason for this discrepancy is not clear from the record.

must be construed in their favor. The defendant objected to the plaintiffs' motion and filed a cross motion for summary judgment on the plaintiffs' complaint.

After a hearing, the trial court denied the plaintiffs' motion for partial summary judgment and partially granted the defendant's motion for summary judgment on the plaintiffs' claim that the defendant had breached the insurance policy. The court denied the defendant's motion for summary judgment with respect to the CUTPA and CUIPA claims on the ground that the motion was premature. The defendant later filed another motion for summary judgment on the plaintiffs' CUIPA and CUTPA claims, alleging that the plaintiffs had failed to present any evidence to support their claim that the defendant incorrectly had interpreted the coverage limitation as a general business practice. The trial court granted that motion.

This appeal followed. The plaintiffs contend that the trial court improperly: (1) determined that the property at 296 Westford Hill Road was a "residential premises of an [i]nsured other than the [i]nsured premises," thereby limiting coverage of their loss to 10 percent of the coverage C limit; and (2) rendered summary judgment in favor of the defendant on the plaintiffs' CUTPA and CUIPA claims. We disagree with both claims.

We first address the plaintiffs' claim that the trial court improperly determined that there was no genuine issue of material fact as to whether the property at 296 Westford Hill Road was a "residential premises of an [i]nsured other than the [i]nsured premises" under the policy's coverage limitation. The plaintiffs claim that the phrase is ambiguous and reasonably can be interpreted to mean exclusively a premises at which *the insured* resides. The defendant counters that the trial court properly determined that the phrase unambiguously

means any property that is used as a residential premises.[4] We conclude that the phrase unambiguously refers to a residential premises owned by an insured.

As a preliminary matter, we set forth the applicable standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 198–99, 931 A.2d 916 (2007).

"[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . An insurance policy is to be interpreted

---

[4] The defendant states that "coverage is determined solely by whether the premises are 'residential' not whether the premises are an insured's 'residence.' " It is not clear whether the defendant believes that the phrase "residential premises of an [i]nsured" in the policy refers exclusively to residential premises *owned by* an insured, or whether the phrase also refers to residential premises that are occupied, but not owned, by an insured. Cf. *Mulledy* v. *West Virginia Ins. Co.*, 201 W. Va. 195, 197, 495 S.E.2d 566 (1997) (interpreting "residential premises of an insured" to include all residential premises, including those neither owned by nor occupied by insured). We find the latter interpretation to be questionable, but there is no need to decide the issue in the present case.

by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous." (Citations omitted; internal quotation marks omitted.) *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 5–6, 942 A.2d 334 (2008).

We begin our analysis with the language of the policy. The policy provides in relevant part: "This policy insures against direct physical loss to property covered under [c]overage C—[p]ersonal [p]roperty, caused by

. . . [f]ire . . . ." As we have indicated, coverage C provides: "We cover personal property owned by or in the care of an [i]nsured. Coverage for personal property usually on residential premises of an [i]nsured other than the [i]nsured premises is limited to 10 percent of the [c]overage C limit." The policy defines "residence" as "a one-[family] to four-family house, a townhouse, a row house or a one-[family] or two-family mobile home."

Contrary to the plaintiffs' claim, nothing in this language suggests that the coverage limitation applies *exclusively* to premises that are *used by the insured* as a residence. Rather, we conclude that an insured of ordinary intelligence and experience reasonably would expect the phrase "residential premises *of an [i]nsured*" to apply to all residential premises that are *owned by the insured,* regardless of whether the insured uses or occupies the premises.[5] (Emphasis added.) Accordingly, we conclude that the language of the coverage limitation is not ambiguous under these circumstances,[6] and that the trial court properly concluded that the property at 296 Westford Hill Road was

---

[5] In support of their argument to the contrary, the plaintiffs contend that the policy definition of " 'residence' " does not apply to the coverage limitation. Rather, they contend, "[t]he word 'residential' reasonably refers to type of *use,* not type of *construction,* and thus [implies] the *use by the insureds* of the premises, not the use [by] uninsured third parties." (Emphasis added.) They further contend that applying the policy definition of residence to the residential premises language of the coverage limitation leads to the "aberrant result" that there would be "100 [percent] coverage of property in a five-unit apartment building actually occupied by the insured or in a business but only 10 [percent] coverage for property in a one to four family structure never occupied by the insured." We conclude that the plaintiffs' focus on the applicability of the policy definition of residence is misplaced. Because there is no dispute in the present case that the residence at 296 Westford Hill Road came within the policy definition of residence, there is no need to decide whether that definition applies to the coverage limitation. We note, however, that the defendant agrees with the plaintiffs that the policy definition of residence does *not* apply to residential premises. Rather, it contends, the phrase residential premises applies to *any* property that is used for residential purposes.

[6] The phrase "residential premises of an [i]nsured" may or may not be ambiguous as to whether it is limited by the policy definition of residence

a residential premises of the insured other than the insured premises.[7]

This interpretation is supported by a leading property insurance treatise, which states: "Coverage for personal property which is usually located at an 'insured's' residence, other than at the 'residence premises,' is limited to 10 [percent] of the limit of liability for [personal property] . . . . This limitation would limit the coverage for the insured's personal property at another residence *owned by an insured*, as for example, a beach

or whether it includes residential premises that are occupied, but not owned, by the insured. See footnote 5 of this opinion. Those questions are not before us in the present case.

We recognize that we have held that "[t]he existence of both a narrow and a broad definition of [an insurance policy term] imports an ambiguity into the meaning of the term . . . ." *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 464, 870 A.2d 1048 (2005). We held in *R.T. Vanderbilt Co.* that, "[b]ecause two equally reasonable definitions of the term . . . exist, the broad definition must, in preference, be adopted because it will sustain the claim and cover the loss." Id., 465. We have concluded in the present case that an insured of ordinary intelligence and experience reasonably would expect the phrase "residential premises of an [i]nsured" to include all residential premises owned by the insured and that nothing in the policy language supports the plaintiffs' exclusive interpretation. Accordingly, the principle that, when a broad meaning and a narrow meaning are equally reasonable, we will adopt the meaning that favors the insured, does not apply.

[7] In reaching this conclusion, the trial court relied on *Mulledy* v. *West Virginia Ins. Co.*, 201 W. Va. 195, 495 S.E.2d 566 (1997). In *Mulledy*, the Supreme Court of Appeals of West Virginia construed a limitation on coverage for personal property loss identical to the limitation at issue in the present case. Id., 196. The court concluded that personal property that the insured kept on a *residential premises that she neither owned nor occupied* was subject to the 10 percent coverage limit. Id., 197. Because the court in *Mulledy* entirely ignored the "of an insured" language in the policy limitation in reaching its conclusion, we do not find *Mulledy*, or the trial court's interpretation of that case, to be persuasive. Indeed, the defendant did not rely on *Mulledy* in support of its position in its brief to this court or in the memorandum of law in support of its cross motion for summary judgment in the trial court.

We note, however, that the insured in *Mulledy* contended that the coverage limitation applied to personal property kept on residential premises *owned by* her. Id. This bolsters our conclusion that a reasonable person of ordinary intelligence and experience would interpret the limitation in this way.

house." (Emphasis added.) 1 R. Brennan & P. Tompa, Insuring Real Property (2003) § 4.04A (3) (a).

Our conclusion also is consistent with the underlying purpose of the coverage limitation. The amount of an insurance policy premium is a function of the level of risk. If a policy issued for one residential premises fully covered personal property usually kept on other residential premises owned by the insured, the insurance company could not accurately calculate the level of risk and the risk could change dramatically depending on whether the insured used or leased out the other residential premises and as the insured acquired and disposed of such properties. It is reasonable to conclude, therefore, that the coverage limitation was intended to ensure that the insurance company is not liable for risks that were not included in the price of the premium.[8] This creates no undue hardship for an insured who owns multiple residential premises because the insured can purchase separate insurance policies for the personal property usually kept on each premises. We can conceive of no reason that an insurance company would limit coverage for personal property usually kept on residential premises owned by the insured other than the insured premises *only if* the insured used the premises as a residence. In fact, the risk to personal property usually kept at residential premises that the insured *does not* use as a residence would be *greater* than the risk to personal property usually kept at residential premises that the insured occupied.

In support of their interpretation of the coverage limitation, the plaintiffs rely on a number of cases from this state and other jurisdictions that have held that the term "residence" means a dwelling in which the insured

___

[8] See 1 R. Brennan & P. Tompa, supra, § 4.04A (3) (a) ("[s]ince the personal property is not at the [insured] premises, no premium is being paid for the coverage, and the limitation restricts the insured from obtaining coverage for personal property in two residences, while paying only one premium").

lives or resides. Upon review of those cases, however, it is apparent that they all either involved the interpretation of policy provisions that differed from the one at issue here or did not involve property insurance policies at all.[9] Significantly, in all of the cases involving property insurance policies, the policies defined residential premises as a dwelling where the insured resides.[10] Accordingly, we do not find these cases to be persuasive.

[9] See *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 686, 590 A.2d 957 (1991) (for purposes of uninsured motorist coverage, " 'resident of the same household' " means person who actually lives in household); *Horak* v. *Middlesex Mutual Assurance Co.*, 181 Conn. 614, 616–17, 436 A.2d 783 (1980) (under exclusion for structures on insured property leased to " 'other than a tenant of the described dwelling,' " guest house leased to tenant was not residence premises); *Epstein* v. *Hartford Casualty Ins. Co.*, 566 So. 2d 331, 332–33 (Fla. App. 1990) (when policy defined "[r]esidence premises" as dwelling where insured resides, definition rendered word " 'residence' " ambiguous as to whether it meant any structure used as dwelling or structure used by insureds as their dwelling); *Puckett* v. *State Farm Ins. Co.*, 526 So. 2d 490, 492–93 (La. App.) (when policy defined " '[r]esidence premises' " as dwelling where insured resides, "insured's residence" was ambiguous as to whether it meant residence described in policy declarations or place where insured was residing), cert. denied, 532 So. 2d 158 (La. 1988); *Heniser* v. *Frankenmuth Mutual Ins.*, 449 Mich. 155, 172–73, 534 N.W.2d 502 (1995) (when policy defined " 'residence premises' " as dwelling where insured resides, insured premises described in policy declarations was not "residence premises" because insured did not reside there); *Roosevelt Properties Co.* v. *Kinney*, 12 Ohio St. 3d 7, 12, 465 N.E.2d 421 (1984) (for purposes of property tax law, residential property is property on which owner resides).

[10] In *Epstein* v. *Hartford Casualty Ins. Co.*, 566 So. 2d 331, 333 (Fla. App. 1990), for example, the Florida District Court of Appeal concluded that the term "residence" was "susceptible of two different interpretations. Under one interpretation, the term 'residence' simply means any dwelling house, apartment, mobile home or similar structure or facility primarily intended to serve as a dwelling. . . . Under another interpretation . . . the term 'residence' applies to a structure or facility actually used by the insureds as their dwelling, or as one of their dwellings." Id. Because the term was ambiguous, the court construed the term in favor of the plaintiff insured to mean a residential premises used by the insured. Id. The court explicitly stated, however, that it "would be less likely to find [that] interpretation to be reasonable if the term 'residence premises' had not specifically been defined as being a 'dwelling where *you* reside.' " (Emphasis in original.) Id.

Our research has not revealed any case other than *Mulledy* v. *West Virginia Ins. Co.*, 201 W. Va. 195, 495 S.E.2d 566 (1997); see footnote 7 of this

The plaintiffs also contend that their intent when they purchased the policy "was to fully cover the personal property used to maintain [the insured premises], including the area immediately surrounding the residence and beyond on a day-to-day basis." They argue that, because the barn and carriage shed were adjacent to the insured premises and were not used as a residence, and because the personal property that they kept there was used in connection with the insured premises, the barn and carriage shed were not "residential premises of an [i]nsured other than the [i]nsured premises . . . ." Having concluded, however, that the coverage limitation unambiguously applied to the property at 296 Westford Hill Road, on which the barn and carriage shed were located, we must conclude that the plaintiffs' subjective intent based on the proximity of the barn and carriage shed to the insured property is irrelevant. See *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 284 Conn. 744, 771, 936 A.2d 224 (2007) ("extrinsic evidence may be considered in determining contractual intent only if a contract is ambiguous").

The foregoing analysis disposes of the plaintiffs' claim that the trial court improperly rendered summary judgment in favor of the defendant on the plaintiffs' CUTPA and CUIPA claims. Because we have concluded that the defendant's interpretation of the policy's coverage limitation was correct, there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation of the statutes.[11]

The judgment is affirmed.

In this opinion the other justices concurred.

opinion; construing the specific language of the coverage limitation at issue in this case.

[11] In determining whether a practice violates CUTPA, we are guided by the criteria set out in the Federal Trade Commission's so-called cigarette

rule: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 155, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006).