RAINFOREST CAFE, INC. *v.* DEPARTMENT OF
REVENUE SERVICES
(SC 18153)

Norcott, Katz, Palmer, Vertefeuille and McLachlan, Js.

Argued April 20—officially released September 8, 2009

*Seth N. Stratton*, with whom, on the brief, was *Ben M. Krowicki*, for the appellant (plaintiff).

*Rupal Shah Palanki*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Paul M. Scimonelli*, assistant attorney general, for the appellee (defendant).

*Charles H. Lenore* and *Daniel L. Gottfried* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal[1] is whether a retailer can be both a "nonresident

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

contractor," pursuant to General Statutes (Rev. to 1999) § 12-430 (7), and a "retailer engaged in business in this state," pursuant to General Statutes (Rev. to 1999) § 12-411 (3), under the Sales and Use Tax Act, General Statutes § 12-406 et seq. (act). The plaintiff, Rainforest Cafe, Inc., appeals from the summary judgment rendered by the trial court in favor of the defendant, the department of revenue services, in the plaintiff's tax appeal brought pursuant to General Statutes § 12-422.[2] The plaintiff claims that the trial court improperly determined that a nonresident contractor could not also be a retailer engaged in business in this state, and that the plaintiff therefore was not relieved of its tax liability under § 12-430 (7) even though it had paid taxes pursuant to § 12-411 (3). We agree with the plaintiff and, accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.[3]

[2] General Statutes § 12-422 provides in relevant part: "Any taxpayer aggrieved because of any order, decision, determination or disallowance of the Commissioner of Revenue Services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of New Britain . . . ."

[3] The plaintiff also claims on appeal that the trial court improperly ruled, sua sponte, that a failure to comply with § 12-430 evinces, by itself, an "intent to evade," which tolls the statute of limitations under General Statutes (Rev. to 2001) § 12-415 (f). The plaintiff contends that the determination of a taxpayer's intent is a fact intensive issue that is inappropriate for summary judgment. Because we conclude that status as a nonresident contractor is not exclusive from status as a retailer engaged in business, and that compliance with § 12-411 (3) satisfies tax liability under § 12-430 (7), we do not reach the factual basis of the plaintiff's claim with regard to the intent to evade.

We note, however, that, in ruling that failure to comply with § 12-430 (7) constituted an intent to evade under § 12-415 (f), the trial court stated that it was guided by this court's holding in *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 823 A.2d 1184 (2003). We disagree with the trial court's reliance on *Leonard*, which is inapposite to the present case. In *Leonard*, which went to judgment after a trial to the court, and not on summary judgment, the plaintiff intentionally had destroyed tax data that he was legally obligated to retain pursuant to a state regulation. Id., 300–301. The regulation in question specifically provided that the failure to maintain the required records would be considered evidence of an intent to evade

The record contains the following undisputed facts and relevant procedural history. In mid-1999, the plaintiff[4] entered into a contract with PCL Construction Services, Inc. (PCL), to construct a restaurant at the Westfarms Mall in Farmington. After PCL completed its construction of the restaurant, the plaintiff opened for business in February, 2000. PCL was a foreign corporation incorporated in Minnesota, although it had been conducting business in Connecticut since 1996 and was a registered taxpayer in this state.

The construction services provided by PCL were taxable under the act pursuant to General Statutes (Rev. to 1999) § 12-407 (2) (i) (I).[5] Consequently, the plaintiff, as the purchaser of the services, was responsible for paying taxes to the defendant. General Statutes (Rev. to 1999) § 12-411 (1) and (2).[6] The act established two

the tax. In the present case, there is no regulation, nor any statutory provision, that provides that a failure to comply with § 12-430 (7) constitutes evidence of an intent to evade, and, therefore, there is no statutory or regulatory support for the trial court's finding of such an intent.

[4] The plaintiff merged with its former wholly owned subsidiary, Rainforest Cafe, Inc.-Mist (Mist), in September, 2000, and became the legal successor to Mist as of December 1, 2000. As Mist's legal successor, the plaintiff is liable for the actions of Mist. For convenience, we use the term plaintiff to refer to both Mist and its legal successor.

[5] General Statutes (Rev. to 1999) § 12-407 (2) provides in relevant part: " 'Sale' and 'selling' mean and include . . . (i) the rendering of . . . (I) services to industrial, commercial or income-producing real property, including but not limited to, such services as management, electrical, plumbing, painting and carpentry . . . ."

[6] General Statutes (Rev. to 1999) § 12-411 provides in relevant part: "(1) An excise tax is hereby imposed on . . . the acceptance or receipt of any services constituting a sale in accordance with subdivision (2) of section 12-407, purchased from any retailer for consumption or use in this state . . . .

"(2) Every person storing, accepting, consuming or otherwise using in this state services . . . purchased from a retailer for storage, acceptance, consumption or any other use in this state . . . is liable for the tax. His liability is not extinguished until the tax has been paid to this state, except that a receipt from a retailer engaged in business in this state . . . given to the purchaser pursuant to subsection (3) of this section is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers. . . ."

procedures for obtaining payment of the taxes on PCL's services. The first, which applied to any taxpayer doing business with a "retailer engaged in business in this state"; General Statutes (Rev. to 1999) § 12-411 (3);[7] obligated the retailer to collect the tax from the taxpayer, remit the tax to the state, and give the taxpayer a receipt as proof of payment. See General Statutes (Rev. to 1999) § 12-411 (2) and (3). The second procedure applied to any taxpayer conducting business with a "nonresident contractor"; General Statutes (Rev. to 1999) § 12-430 (7) (b);[8] which allowed the taxpayer either to deduct and withhold 5 percent of the contract price from the contractor and to pay this amount to the commissioner of revenue services directly as the tax, or to provide a guarantee bond for the same 5 percent amount. In the present case, the plaintiff complied with § 12-411 (3), paid the tax to PCL and received receipts for its tax payments; PCL, however, did not remit the taxes collected from the plaintiff to the defendant.

In August, 2001, the plaintiff received notice that the defendant would conduct a sales and use tax audit of the plaintiff's business. This audit occurred in February, 2003, and resulted in the defendant assessing the plaintiff with a sales and use tax deficiency for the period from July 1, 1999, through December 31, 2000. The

[7] General Statutes (Rev. to 1999) § 12-411 (3) provides in relevant part: "Every retailer engaged in business in this state and making sales of services . . . shall, at the time of making a sale . . . collect the use tax from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the commissioner [of revenue services]. . . ."

[8] General Statutes (Rev. to 1999) § 12-430 (7) (b) provides in relevant part: "[A]ny person dealing with a nonresident contractor without first obtaining a copy of [a certificate proving the contractor paid the tax in advance] from said commissioner [of revenue services] shall deduct five per cent of all amounts payable to such nonresident contractor and pay it over to said commissioner . . . or shall furnish said commissioner with a guarantee bond satisfactory to said commissioner in a sum equivalent to five per cent of such total amount . . . ."

deficiency assessment consisted largely of taxes due on PCL's construction work.

The plaintiff then appealed from the deficiency assessment to the Superior Court pursuant to § 12-422. See footnote 2 of this opinion. The defendant thereafter filed a motion for summary judgment, claiming that PCL was a nonresident contractor and that the plaintiff had failed to follow the withholding provisions of § 12-430 (7) (b). The plaintiff filed both an opposition to the defendant's motion and a cross motion for summary judgment, asserting, first, that the statute of limitations[9] barred the deficiency assessment and also that the plaintiff had been absolved of all tax liability because it had paid PCL the tax due and obtained receipts pursuant to § 12-411 (2) and (3). The defendant replied that the plaintiff had failed to file timely tax returns, which tolled the statute of limitations under General Statutes (Rev. to 2001) § 12-415 (f). The trial court granted the defendant's motion for summary judgment, reasoning that PCL was a nonresident contractor and that the plaintiff should have complied with § 12-430 (7) (b) (i), despite its payment of the taxes under § 12-411 (3). The trial court rejected the claims raised by the parties regarding the statute of limitations but, sua sponte, concluded that the plaintiff's failure to comply with § 12-430 (7) evinced an intent to evade under § 12-415 (f), thereby tolling the statute of limitations.

The plaintiff moved for reargument, contending that the term "retailer engaged in business in this state" under § 12-411 (3) is separately defined from, and thus

---

[9] General Statutes (Rev. to 2001) § 12-415 (f) provides in relevant part: "Except in the case of fraud, intent to evade this chapter or authorized regulations, [or] failure to make a return . . . every notice of a deficiency assessment shall be mailed within three years after the last day of the month following the period for which the amount is proposed to be assessed or within three years after the return is filed, whichever period expires later. . . ."

not mutually exclusive from, the term "nonresident contractor" under § 12-430 (7). The plaintiff further claimed that an "intent to evade" under § 12-415 (f) required a factual inquiry that was not appropriate for disposition by summary judgment. The trial court ultimately denied the plaintiff's motion for reargument and determined that, because there was no factual dispute regarding the plaintiff's failure to comply with § 12-430 (7) (b), the plaintiff had evidenced an intent to evade the provisions of the act, which thereby tolled the statute of limitations. The trial court subsequently rendered summary judgment in favor of the defendant. This appeal followed.

On appeal to this court, the plaintiff claims that the trial court improperly determined that PCL was a nonresident contractor under § 12-430 (7) and, thus, could not have been a retailer engaged in business in this state under § 12-411 (3). More specifically, the plaintiff contends that PCL qualifies as a retailer engaged in business in this state and that the trial court failed to recognize that the plaintiff's tax liability previously had been extinguished by virtue of its compliance with § 12-411 (3). In response, the defendant claims that the trial court properly determined that, because the plaintiff was required but failed to comply with the requirements of § 12-430 (7), it is statutorily liable for the tax deficiency assessment. As an alternate ground for affirmance, the defendant contends that the plaintiff also failed to file a tax return despite its obligation to do so by virtue of purchases it made from vendors other than PCL during the audit period. We agree with the plaintiff that the terms "retailer engaged in business in this state" and "nonresident contractor" are not mutually exclusive, and, accordingly, that the act allowed the plaintiff to comply with § 12-411 (3) to satisfy its tax obligation. We therefore conclude that the trial court improperly granted the defendant's motion for sum-

mary judgment. In addition, we do not reach the merits of the defendant's alternate ground for affirmance because we conclude that a genuine issue of material fact remains as to the plaintiff's tax filings.

As a preliminary matter, we set forth the applicable standard of review for appeals from the entry of summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Zulick* v. *Patrons Mutual Ins. Co.*, 287 Conn. 367, 372, 949 A.2d 1084 (2008). "[A] sales and use tax appeal taken pursuant to § 12-422 is a trial de novo." (Internal quotation marks omitted.) *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 294, 823 A.2d 1184 (2003).

The plaintiff's claim challenging the trial court's interpretation of §§ 12-430 (7) and 12-411 (3) is also subject to plenary review. See, e.g., *Stiffler* v. *Continental Ins. Co.*, 288 Conn. 38, 42, 950 A.2d 1270 (2008); *Considine* v. *Waterbury*, 279 Conn. 830, 836, 905 A.2d 70 (2006). "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The pro-

cess of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) *State* v. *Peters*, 287 Conn. 82, 87–88, 946 A.2d 1231 (2008); see also *Achillion Pharmaceuticals, Inc.* v. *Law*, 291 Conn. 525, 531, 970 A.2d 57 (2009) ("[b]ecause statutory interpretation is a question of law, our review is de novo" [internal quotation marks omitted]). "In seeking to determine that meaning . . . [General Statutes] § 1-2z[10] directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 651, 969 A.2d 750 (2009). We recognize that "terms in a statute are to be

[10] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Lutters*, 270 Conn. 198, 206, 853 A.2d 434 (2004).

In accordance with § 1-2z, we begin our analysis with the text of §§ 12-411 (3) and 12-430 (7). General Statutes (Rev. to 1999) § 12-411 (3) provides in relevant part: "Every *retailer engaged in business in this state* and making sales of services . . . shall, at the time of making a sale . . . collect the use tax from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the commissioner [of revenue services]. . . ." (Emphasis added.) The phrase "[e]ngaged in business in this state" is statutorily defined as "rendering in this state any service described in any of the subdivisions of subsection (2) of this section . . . ."[11] General Statutes (Rev. to 1999) § 12-407 (15) (C). Subsection (2) of that statute specifically includes "services to industrial, commercial or income-producing real property," such as those provided by PCL. General Statutes (Rev. to 1999) § 12-407 (2) (i) (I); see footnote 5 of this opinion. It is axiomatic that this statutory definition is binding on our courts. General Statutes § 1-2z; *International Business Machine Corp.* v. *Brown*, 167 Conn. 123, 134, 355 A.2d 236 (1974) ("[w]hen legislation contains a specific definition, the courts are bound to accept that definition").

General Statutes (Rev. to 1999) § 12-430 (7) (b), as it was in effect from 1999 through early 2000, the period in which PCL's construction services were rendered in the present case, provided in relevant part: "[A]ny person dealing with a *nonresident contractor* without first obtaining a copy of [a certificate proving the contractor paid the tax in advance] from [the commissioner of

---

[11] It is undisputed that the services provided by PCL fall within the services enumerated in § 12-407 (2). See footnote 5 of this opinion.

revenue services] shall deduct five per cent of all amounts payable to such nonresident contractor and pay it over to said commissioner on behalf of or as agent for such nonresident contractor or shall furnish said commissioner with a guarantee bond satisfactory to said commissioner in a sum equivalent to five per cent of such total amount, to secure payment of the taxes payable with respect to such tangible personal property consumed or used pursuant to or in the carrying out of such contract or any other state taxes . . . ." (Emphasis added.) That statute further provided that "if any person dealing with such nonresident contractor fails to comply with subdivision (b) of this subsection, such person shall be personally liable for payment of the taxes imposed by this chapter with respect to such tangible personal property consumed or used pursuant to or in carrying out such contract or any other state taxes . . . ." General Statutes (Rev. to 1999) § 12-430 (7) (c).

The phrase "nonresident contractor" is not defined anywhere in the act. "In the construction of statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, 288 Conn. 628, 636, 953 A.2d 877 (2008). The word "nonresident" is defined with substantial similarity in a number of dictionaries, each referring to a lack of presence in a particularized locality. See, e.g., American Heritage Dictionary of the English Language (3d Ed. 1992) (nonresident defined as "[n]ot living in a particular place"); Webster's Third

New International Dictionary (nonresident defined as "not residing in a particular place or a place referred to by implication"); Black's Law Dictionary (9th Ed. 2009) (nonresident defined as "[o]ne who does not live within the jurisdiction in question"). The word "contractor" is also defined with notable similarity in a number of dictionaries, each referencing a party to a contract. See, e.g., American Heritage Dictionary of the English Language (3d Ed. 1992) (contractor defined as "[o]ne that agrees to furnish materials or perform services at a specified price, especially for construction work"); Webster's Third New International Dictionary (contractor defined as "one that contracts: a party to a bargain: one that formally undertakes to do something for another"); Black's Law Dictionary (9th Ed. 2009) (contractor defined as "[a] party to a contract . . . [m]ore spec[ifically], one who contracts to do work or provide supplies for another").

The Regulations of Connecticut State Agencies, which have the full force and effect of the law; *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 135, 971 A.2d 24 (2009); *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 497, 512 A.2d 199 ("the validly enacted regulations of an administrative agency carry the force of statutory law"), appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); inform our analysis. Section 12-430 (7)-1 (b) of the Regulations of Connecticut State Agencies provides: "The term 'nonresident contractor' means a *contractor without a permanent place of business in this state.* Such a place of business means an office *continuously maintained, occupied and used by such contractor's regular employees regularly in attendance to carry on such contractor's business* in the contractor's own name. An office maintained, occupied and used by a contractor only for the duration of a contract will not be considered a permanent place of business.

An office maintained, occupied and used by a person affiliated with a contractor will not be considered a permanent place of business of the contractor." (Emphasis added.) On the basis of the regulations and the common dictionary definitions, we conclude that a nonresident contractor under § 12-430 (7) is an individual who is not physically located within this state or a business entity that does not maintain a permanent place of business in the state.

In the present case, the undisputed facts are that PCL, a Minnesota corporation, provided services to an industrial, commercial or income producing property in Connecticut by engaging in construction work on the plaintiff's restaurant at Westfarms Mall, and that it contracted with the plaintiff without having a continuously maintained office in Connecticut where it regularly conducted business. PCL thus was both a retailer engaged in business in this state under § 12-411 (3) and a nonresident contractor under § 12-430 (7).

We recognize the apparent conflict that arises when a taxpayer contracts with an entity that is both a retailer engaged in business in this state under § 12-411 (3) and a nonresident contractor under § 12-430 (7). Because both statutes employ the word "shall" with regard to the payment of taxes, and because the word "shall" creates a mandatory duty when it is "juxtaposed with [a] substantive action verb"; *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 263, 932 A.2d 1053 (2007); both §§ 12-411 (3) and 12-430 (7) presumably create mandatory duties to pay taxes in a certain specified manner. See General Statutes (Rev. to 1999) § 12-411 (3) ("[e]very retailer engaged in business in this state . . . *shall*, at the time of making a sale . . . *collect the use tax* from the purchaser" [emphasis added]); General Statutes (Rev. to 1999) § 12-430 (7) (b) ("any person dealing with a nonresident contractor . . . *shall* deduct five per cent of all amounts payable to

such nonresident contractor and *pay* it over to said commissioner [of revenue services] . . . or *shall furnish* said commissioner with a guarantee bond" [emphasis added]).

The application of these dual mandatory duties, however, would result in a requirement that a taxpayer that contracts with a "retailer engaged in business in this state" that is also a "nonresident contractor" would be required to pay the applicable sales and use tax twice, an absurd result, for it is well established that double taxation is a result to be avoided. See *Sharper Image Corp.* v. *Miller*, 240 Conn. 531, 537, 692 A.2d 774 (1997) (construing statute to avoid double taxation); *Waterbury Motor Lease, Inc.* v. *Tax Commissioner*, 174 Conn. 51, 63–64, 381 A.2d 552 (1977) (double taxation means same tax imposed by same tax authority on same matter); *Connecticut Light & Power Co.* v. *Walsh*, 134 Conn. 295, 310, 57 A.2d 128 (1948) ("[o]ur General Assembly is under no constitutional prohibition against double taxation . . . [but] it is to be avoided where the intent of the legislature is ambiguous"); *Blasko* v. *Commissioner of Revenue Services*, 98 Conn. App. 439, 457, 910 A.2d 219 (2006) (double taxation by same taxing authority "created a result that is neither fair nor equitable"). "[U]nder § 1-2z, we are free to examine extratextual evidence of the meaning of a statute, including its legislative history, when application of the statute's plain and unambiguous language leads to an [absurd or] unworkable result." *Rivers* v. *New Britain*, 288 Conn. 1, 18–19, 950 A.2d 1247 (2008). Because the plain language of §§ 12-411 (3) and 12-430 (7) (b) leads to an absurd result, we turn to extratextual sources in order to determine whether we can construe those statutes in a manner so that we may avoid double taxation.

As we do so, we are mindful that "we must, if possible, construe two statutes in a manner that gives effect to both, eschewing an interpretation that would render

either ineffective. In construing two seemingly conflicting statutes, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . *State* v. *Ledbetter*, 240 Conn. 317, 336, 692 A.2d 713 (1997). . . . Accordingly, [i]f two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both. . . . *Wilson* v. *Cohen*, 222 Conn. 591, 598, 610 A.2d 1117 (1992); see *Hirschfeld* v. *Commission on Claims*, 172 Conn. 603, 607, 376 A.2d 71 (1977). If a court can by any fair interpretation find a reasonable field of operation for two allegedly inconsistent statutes, without destroying or preventing their evident meaning and intent, it is the duty of the court to do so. *Knights of Columbus Council* v. *Mulcahy*, 154 Conn. 583, 590, 227 A.2d 413 (1967); *Shanley* v. *Jankura*, 144 Conn. 694, 702, 137 A.2d 536 (1957). *Windham First Taxing District* v. *Windham*, 208 Conn. 543, 553, 546 A.2d 226 (1988). Therefore, [w]e must, if possible, read the two statutes together and construe each to leave room for the meaningful operation of the other. *State* v. *West*, 192 Conn. 488, 494, 472 A.2d 775 (1984). In addition, [i]f two constructions of a statute are possible, we will adopt the one that makes the statute effective and workable . . . . *State* v. *Scott*, 256 Conn. 517, 538, 779 A.2d 702 (2001)." (Citation omitted; internal quotation marks omitted.) *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 156–57, 788 A.2d 1158 (2002). "We emphasize, however, that [a]long with these principles, we are also guided by the applicable rules of statutory construction specifically associated with the interpretation of tax statutes. . . . [W]hen the issue is the *imposition of a tax*, rather than a claimed right to an exemption or a deduction, the governing authorities must be *strictly construed against the commissioner [of revenue services]* and in favor of the taxpayer." (Citation omitted; emphasis

added; internal quotation marks omitted.) *Old Farms Associates* v. *Commissioner of Revenue Services*, 279 Conn. 465, 481, 903 A.2d 152 (2006).

The legislative history of § 12-430 is helpful to our attempt to reconcile both §§ 12-430 (7) and 12-411 (3). It is evident, that, in enacting § 12-430 (7), the legislature intended to ensure payment of the sales and use tax by nonresident contractors who otherwise would be difficult to pursue. Public Acts 1975, No. 75-470, § 1. In a hearing before the joint standing committee on finance, the purpose of the bill that added subsection (7) to § 12-430 was described by Sam Karam, an attorney with the state tax department, as follows: "The proposed legislation would [*e*]*nsure the legal obligation of an out-of-state contractor to pay the sales and use tax.* These people come and go and many times it's very difficult to get them before they go so we feel that this would be in the interest of the [s]tate . . . *to require a bond to assure us of the revenues that are due and owing the [s]tate . . . .*" (Emphasis added.) Conn. Joint Standing Committee Hearings, Finance, Pt. 2, 1975 Sess., p. 388. The 5 percent cash or bond requirement now included in § 12-430 (7) thus was intended for out-of-state contractors. See General Statutes (Rev. to 1999) § 12-430 (7) (b) ("[a]ny person dealing with a nonresident contractor . . . *shall* deduct five per cent of all amounts payable to such nonresident contractor and *pay* it over to said commissioner [of revenue services] . . . or *shall furnish* said commissioner with a guarantee bond" [emphasis added]).

Where, however, as here, a resident taxpayer contracts with a nonresident contractor that also qualifies as a retailer conducting business within the state, and the taxpayer pays the applicable sales and use tax to the contractor pursuant to § 12-411 (3), the contractor-retailer is required to pay the state the tax revenue that is owed. Moreover, the resident taxpayer has done all

that is required of it: it has paid the required tax in accordance with applicable statutory procedure. See General Statutes (Rev. to 1999) § 12-411 (3) ("[e]very retailer engaged in business in this state . . . *shall*, at the time of making a sale . . . *collect the use tax* from the purchaser" [emphasis added]). The state's pursuit of the taxes paid then should focus on the "retailer conducting business within the state" who has collected the tax from the taxpayer, but has neglected to pay it to the state.

Because the statutes in question impose a tax, we must strictly construe them against the defendant. Moreover, when there is a construction of §§ 12-411 (3) and 12-430 (7) that makes them both effective and workable, we must adopt it. We therefore conclude that §§ 12-411 (3) and 12-430 (7) should be construed so that a taxpayer who pays the applicable sales and use tax and obtains receipts pursuant to § 12-411 (3) is relieved from liability for failure to withhold under § 12-430 (7) (c). In other words, if a resident taxpayer, such as the plaintiff, has contracted with a nonresident contractor that also qualifies as a retailer conducting business within the state, such as PCL, and pays the applicable sales and use tax pursuant to § 12-411 (3) and obtains receipts for those payments, the taxpayer must be deemed exempt from payment of the tax a second time under § 12-430 (7) (b). Similarly, a taxpayer who withholds 5 percent of the amounts payable to a nonresident contractor and pays it over to the commissioner of revenue services or provides a guarantee bond under § 12-430 (7) (b) must be relieved of liability for its failure to pay the taxes and obtain a receipt pursuant to § 12-411 (3). The taxpayer must comply with either § 12-411 (3) or § 12-430 (7), but not both. Construing these statutes in such a fashion avoids the absurd result of double taxation, yet ensures that the defendant

receives the taxes that are due and owing.[12] We conclude that the trial court improperly granted the defendant's motion for summary judgment. We therefore reverse the judgment of the trial court, which concluded that the plaintiff was obliged to comply with § 12-430 (7) despite its compliance with § 12-411 (3), and remand the case for further proceedings in the trial court.

Because we are reversing the judgment of the trial court, we briefly address the defendant's alternate ground for affirmance, which is that the trial court's judgment can be affirmed on the ground that the plaintiff failed to file a tax return for other taxes tolled. The defendant claims that the plaintiff failed to file tax returns covering purchases made from vendors other than PCL during the relevant time period, thus tolling the statute of limitations under § 12-415 (f). The plaintiff neither admits nor denies that it failed to file tax returns for the period in question. It contends that the trial court's determination that the plaintiff should have filed a tax return raises factual issues that are inappropriate for resolution on cross motions for summary judgment. We agree.

The relevant statute governing deficiency assessments provides in relevant part: "Except in the case of fraud, intent to evade this chapter or authorized regulations, [or] failure to make a return . . . every notice of a deficiency assessment shall be mailed within three years after the last day of the month following the period for which the amount is proposed to be assessed or within three years after the return is filed, whichever period expires later. . . ." General Statutes (Rev. to 2001) § 12-415 (f). It is axiomatic that "[t]he party moving for summary judgment has the burden of

---

[12] We acknowledge that under circumstances such as those in the present case, compliance with only § 12-430 (7) (b) may be the most direct route to payment satisfaction. Compliance with § 12-411 (3), while not as direct, is also satisfactory.

showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." *Zulick* v. *Patrons Mutual Ins. Co.*, supra, 287 Conn. 372.

In the present case, there is no evidence in the record to indicate that the plaintiff failed to file a tax return. The defendant relies on an ambiguous statement made by the plaintiff in which the plaintiff admitted to making purchases from vendors other than PCL. In that statement, however, the plaintiff did not admit that it had failed to file any tax returns with regard to those purchases. Thus, there remains a genuine issue of material fact as to whether the plaintiff failed to file any required tax returns.[13] We therefore conclude that it would be improper to affirm the trial court on the basis of the defendant's alternate ground to affirm.

The judgment is reversed and the case is remanded to the trial court for further proceedings.

In this opinion the other justices concurred.

---

[13] We note that this factual issue also precludes us from directing judgment in the plaintiff's favor, as the plaintiff requested in its briefs filed in this court.