******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# KRIS J. LIPPI ET AL. *v.* UNITED SERVICES AUTOMOBILE ASSOCIATION
## (AC 43470)

Alvord, Alexander and Bishop, Js.

*Syllabus*

The plaintiffs sought to recover damages from the defendant insurance company, alleging that the defendant breached a homeowners insurance policy that insured their residential property. The policy excluded coverage for "collapse," except as specifically provided for in the policy, which defined "collapse" as, inter alia, a "sudden falling or caving in" of a building. The plaintiffs discovered cracks in the walls of their basement, and filed a claim for coverage with the defendant. A contractor inspected the cracks and stated that they appeared similar to the cracks associated with the deterioration of concrete caused by the presence of a chemical compound, pyrrhotite, in the mixture used to make the concrete walls. The defendant denied coverage on the basis of a provision of the policy excluding coverage for, inter alia, cracking of walls, floors, roofs or ceilings. The plaintiffs alleged that the defendant breached the policy by denying coverage for the cracks in the basement walls under the collapse provision of the policy. The defendant filed a motion for summary judgment, arguing that the plaintiffs demonstrated no evidence of collapse under the policy. The trial court granted the defendant's motion for summary judgment, concluding that the plaintiffs could not demonstrate that the damage to their property constituted a sudden "caving in," and, therefore, concluded that the defendant had not breached its contract with the plaintiffs. From the judgment rendered thereon, the plaintiffs appealed to this court. *Held*:

1. The plaintiffs could not prevail on their claim that the trial court erred in concluding that there was no genuine issue of material fact as to whether they were entitled to coverage under their homeowners insurance policy because their property did not suffer a collapse as defined in the policy, which was based on their claim that the trial court improperly interpreted the phrase "caving in": the phrase "caving in" was not ambiguous, the only damage alleged by the plaintiffs was the appearance of cracks in their basement walls, and, although the plaintiffs argued that the term "caving in" can mean that the basement walls have yielded to the internal force of the oxidation of pyrrhotite, this was just an alternative description of the cracks, thus, the mere cracks in the walls of the plaintiffs' basement, in the absence of any evidence of displacement, shifting or bowing of the walls, could not be understood to be included under the policy's definition of "collapse" as a "caving in"; moreover, the meaning of the word "sudden" as used in the context of the collapse provision could not be construed to encompass the gradual nature of the cracking that had occurred to the walls of the plaintiffs' basement.

2. The trial court applied the correct standard in granting the defendant's motion for summary judgment: although the plaintiffs claimed that the court improperly shifted the burden to them and that the defendant offered no evidence demonstrating that their home had not caved in, the court found that the defendant provided evidence that the house had not fallen or caved in, was safe to live in, and that the damage occurred over a long period of time, and the plaintiffs failed to recite specific facts that contradicted those provided by the defendant's evidence because they did not allege or provide any evidence that the damage to the walls constituted more than mere cracking.

Argued September 22—officially released December 28, 2021

*Procedural History*

Action seeking to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Tolland, where the court, *Farley, J.*, granted the defendant's motion

for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Jeffrey R. Lindequist*, for the appellants (plaintiffs).

*Theodore C. Schultz*, pro hac vice, with whom were *Alice M. Forbes*, pro hac vice, and *William J. Forbes*, for the appellee (defendant).

*Opinion*

ALEXANDER, J. The plaintiffs, Kris J. Lippi and Gina M. Lippi, appeal from the trial court's rendering of summary judgment in favor of the defendant, United Services Automobile Association, on the plaintiffs' two count complaint that alleged breach of an insurance policy and extracontractual claims. On appeal, the plaintiffs claim that the court erred by improperly granting the defendant's motion for summary judgment. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiffs purchased residential property at 46 Ellsworth Circle in South Windsor in 2010. The house on this property was built in 1998. The plaintiffs have maintained a homeowners insurance policy on the property with the defendant from the time they purchased the property.

The policy provides coverage for direct, physical loss to the covered property, unless excluded in "SECTION I—LOSSES WE DO NOT COVER." The exclusions include "[s]ettling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . ." These exclusions apply to the "ADDITIONAL COVERAGES" provision of the policy by endorsement. The policy does not insure for damages consisting or caused, directly or indirectly, by "collapse," other than as provided under the "ADDITIONAL COVERAGES" provision. (Internal quotation marks omitted.) The "ADDITIONAL COVERAGES" provision provides in relevant part: "8. 'Collapse' For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving 'collapse' of a building or any part of a building only when the 'collapse' is caused by one or more of the following: a. 'Named peril(s)' apply to covered buildings and personal property for loss insured by this additional coverage. b. Decay that is hidden from view, meaning damage that is unknown prior to collapse or that does not result from a failure to reasonably maintain the property . . . f. Use of defective material or methods in construction, remodeling or renovation . . . ." (Emphasis omitted.) The policy defines "collapse" as "a. A sudden falling or caving in; or b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use." (Internal quotation marks omitted.) Thus, the policy excludes coverage for "collapse," except as provided by the "ADDITIONAL COVERAGES" provision and subject to the exclusions described under "LOSSES WE DO NOT COVER," with "collapse" defined under the policy's "DEFINITIONS" section, as amended by endorsement. (Internal quotation marks omitted.)

In 2016, the plaintiffs discovered cracks in the walls

of their basement. A contractor inspected the cracks and stated that they appeared similar to the cracks associated with the deterioration of concrete caused by the presence of a chemical compound, pyrrhotite, in the mixture used to make the concrete walls. The plaintiffs learned that their basement walls likely were constructed with concrete that contained pyrrhotite and was manufactured by the J.J. Mottes Concrete Company. The plaintiffs filed a claim for coverage with the defendant, which the defendant denied on the basis of the "LOSSES WE DO NOT COVER" provision that excludes coverage for "[s]ettling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . ."

The plaintiffs commenced this action in July, 2016, claiming that the defendant breached the homeowners insurance policy that it had issued to them by denying coverage for cracks in the walls of their basement under the collapse provision of the policy. Thereafter, the plaintiffs had the property inspected by two engineers, James L. Silva and David Grandprè. Silva stated that the cracking "appears to be consistent with the conditions that are usually observed after the incipient stage of a concrete sulfate attack . . . ." (Emphasis omitted.) He further explained that "the immediate replacement of the foundation is not warranted" but that "the rate of damage can accelerate and a foundation replacement could likely be required within the next two to five years." (Emphasis omitted.) Grandprè stated that the property was not unsafe to live in and he could not say when, or if, the walls would ever need to be replaced. He did not observe any shifting, bowing or other displacement of the walls or other structural elements. The plaintiffs have continued to reside at the property and stated that they feel safe living there.

In April, 2019, the defendant filed a motion for summary judgment maintaining that "the [plaintiffs] have no evidence of collapse under the policy . . . . The [plaintiffs'] own expert admits the [plaintiffs'] foundation does not need replacement now, and may never need replacing in the future . . . . Furthermore, the [plaintiffs'] policy does not cover losses that happen over time, such as pyrrhotite degradation in concrete." The plaintiffs countered in their opposition to the defendant's motion that "the record suggests that [the plaintiffs] have suffered a collapse of the basement walls of their home, as defined by the terms of one or more of the policies issued by the defendant, which collapse was caused by an enumerated peril. To the extent that the record does not clearly demonstrate such a covered collapse, or the timing thereof, this lack of clarity arises from factual issues that preclude summary judgment." After oral argument, and in a written decision, the court granted the defendant's motion for summary judgment.

In its decision, the court discussed the definition of

"collapse" as it applied to the "collapse" coverage contained within the policy issued by the defendant to the plaintiffs. (Internal quotation marks omitted.) The court noted that the policy defines "[c]ollapse" as "a. A sudden falling or caving in; or b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use." The court also noted the policy's exclusion for "[s]ettling, *cracking*, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings." (Emphasis added.) The court concluded that the plaintiffs could not establish that the damage to their property constituted a "sudden . . . caving in" and, therefore, the defendant had not breached its contract with the plaintiffs. (Internal quotation marks omitted.)

The court determined that "[t]he facts of this case do not raise a jury question as to whether the plaintiffs' basement walls have experienced a caving in. There is no evidence of any displacement, shifting or bowing of [the] walls. There is only evidence of cracking resulting from the internal pressure caused by the chemical reaction the plaintiffs maintain is occurring. . . . Moreover, the evidence in this case places the damage to the plaintiff's basement walls squarely within the scope of the cracking exclusion recited above.

"Further, in order for the plaintiffs to establish coverage, any caving in must have occurred suddenly, i.e., abruptly. A gradual loss of strength, even where it does include a gradual succumbing to external forces, is not sudden. While there is evidence that the basement walls have experienced a gradual loss of strength, the record evidence only supports a conclusion that it has been a gradual process. Damage that occurs gradually over time does not satisfy the requirement that any caving in must be sudden." The court then concluded that the plaintiffs' extracontractual claims were not viable.

On appeal, the plaintiffs claim that the trial court erred in granting the defendant's motion for summary judgment. Specifically, the plaintiffs contend that the trial court erred by (1) concluding that the plaintiffs' property did not suffer a collapse as defined in the policy issued by the defendant because there existed a genuine issue of material fact as to whether the damage to the property constituted a "sudden . . . caving in," and (2) failing to apply the correct standard in granting the defendant's motion for summary judgment.[1] (Internal quotation marks omitted.) We disagree and, accordingly, affirm the judgment of the trial court.

We first set forth the applicable standard of review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant . . . summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Warzecha* v. *USAA Casualty Ins. Co.*, 206 Conn. App. 188, 190–91, 259 A.3d 1251 (2021).

"[C]onstruction of a contract of insurance presents a question of law for the [trial] court which this court reviews de novo." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 333 Conn. 343, 364, 216 A.3d 629 (2019). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract . . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity [when] the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Internal quotation marks omitted.) *Jemiola* v. *Hartford Casualty Ins. Co.*, 335 Conn. 117, 128–29, 229 A.3d 84 (2019).

In *Jemiola*, the plaintiff commenced an action against the defendant insurance company, claiming that cracks in the basement walls of the plaintiff's home were covered under the collapse provision of her homeowners insurance policy. Id., 119. The trial court granted the

defendant's motion for summary judgment and, on appeal, our Supreme Court affirmed the trial court's judgment. Id., 119–20. The definition of collapse in that policy was "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." (Internal quotation marks omitted.) Id., 121. The court concluded that there was no plausible interpretation of the policy's definition of "collapse" that "reasonably encompasses a home, such as the plaintiff's, that is still standing and capable of being safely lived in for many years—if not decades—to come." Id., 135. Additionally, the court concluded that the plaintiff's reliance in *Jemiola* on cases with materially different facts was misplaced, because "[c]ontext is . . . central to the way in which policy language is applied; the same language may be found both ambiguous and unambiguous as applied to different facts. . . . Language in an insurance contract, therefore, must be construed in the circumstances of [a particular] case, and cannot be found to be ambiguous [or unambiguous] in the abstract. . . . [O]ne court's determination that [a] term . . . was unambiguous, in the specific context of the case that was before it, is not dispositive of whether the term is clear in the context of a wholly different matter." (Internal quotation marks omitted.) Id., 134.

I

The plaintiffs first argue that the court erred when it concluded that there was no genuine issue of material fact as to whether they were entitled to coverage under the insurance policy issued by the defendant. They contend that the trial court's interpretation of the phrase "sudden falling or caving in" was in error because it "failed to construe the ambiguities in favor of the plaintiffs . . . ." (Internal quotation marks omitted.) They argue that the term "cave in" can reasonably be defined as to "yield" or to "submit to pressure" and that the basement walls of the property have yielded to the chemical reaction in the concrete. (Internal quotation marks omitted.) However, we will not construe words in a contract to import ambiguity when an ambiguity is not present. See *Jemiola* v. *Hartford Casualty Ins. Co.*, supra, 335 Conn. 129. In this context, we do not conclude that the phrase "caving in" is ambiguous.

In support of their argument, the plaintiffs cite multiple cases that can be distinguished from the circumstances of the present case. In *Sirois* v. *USAA Casualty Ins. Co.*, 342 F. Supp. 3d 235, 241–42 (D. Conn. 2018), the United States District Court for the District of Connecticut, in interpreting the same policy language as that which is at issue in the present case, denied the defendant insurance company's motion for summary judgment after finding that the phrase "caving in" was ambiguous. (Internal quotation marks omitted.) The

court stated that the plaintiffs' proposed meaning, "yield" or to "submit to pressure," was a reasonable interpretation. (Internal quotation marks omitted.) Id., 242. In that case, however, the plaintiffs alleged in their complaint that the basement walls of their home had "a series of horizontal and vertical cracks" and that they had begun to show signs of "bowing, bulging, jacking, shifting, and other instances of differential inward and upward motion." (Internal quotation marks omitted.) *Sirois* v. *USAA Casualty Ins. Co.*, United States District Court, Docket No. 3:16-CV-1172 (MPS) (D. Conn. August 29, 2017) (prior decision denying defendant's motion to dismiss).

In *Gnann* v. *United Services Automobile Assn.*, Superior Court, judicial district of Tolland, Docket No. CV-16-6010517-S (July 11, 2019) (68 Conn. L. Rptr. 882, 890), the court, also interpreting the same policy language as that which is at issue in the present case, denied the defendant insurance company's motion for summary judgment, finding that there was a genuine issue of material fact as to whether the damage to the plaintiff's basement walls constituted a " 'caving in.' " The plaintiffs in that case alleged that there were large cracks in their basement walls, loose pieces of concrete that could be removed from the walls, and the deterioration had "resulted in the bulging, bowing and shifting of the walls" and further, that these conditions "are evidence that the concrete basement walls have failed and have begun to move inward . . . ." (Internal quotation marks omitted.) Id., 883. On the basis of these facts, the court found the phrase " 'caving in' " to be ambiguous and concluded that there was a genuine issue of material fact as to whether the damage constituted " 'caving in . . . .' " Id., 890.

Turning to the present case and considering the evidence in the light most favorable to the plaintiffs as the nonmoving parties, the facts of this case can be distinguished from both *Sirois* and *Gnann* because the only damage alleged by the plaintiffs is the appearance of cracks in their basement walls. Although the plaintiffs contend that the term "caving in" can mean that the "basement walls have *yielded* to the internal force of the expansive oxidation of pyrrhotite," this is just an alternative description of the cracks in the walls of their basement. (Emphasis in original; internal quotation marks omitted.) On the basis of the facts and circumstances of the present case, the mere cracks in the walls of the plaintiffs' basement, in the absence of any evidence of displacement, shifting or bowing of the walls, cannot be understood to be included under the policy's definition of "collapse" as a "caving in . . . ." See *Jemiola* v. *Hartford Casualty Ins. Co.*, supra, 335 Conn. 134.

Next, the plaintiffs contend that the term "sudden" must be construed to mean "unexpected" or, in the

alternative, that the word "sudden" is ambiguous and should be construed in favor of the insured.[2] (Internal quotation marks omitted.) We disagree. In *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 540, 791 A.2d 489 (2002) (*Buell*), our Supreme Court interpreted the word "sudden" in an insurance policy to mean "temporally abrupt . . . ." The policy at issue in that case excluded pollution related claims from coverage but contained an exception to the pollution exclusion reinstating coverage when the release of pollutants was " 'sudden and accidental.' " Id., 534. The plaintiff argued that although the pollution occurred over a period of years, the exception to the pollution exclusion should apply because the term " 'sudden' " meant "unexpected . . . ." Id., 536. The court stated that the word "sudden" generally described the unexpected nature of an event but is also used to describe a situation that is abrupt or quickly occurring. Id., 540. It explained that the word "sudden" may "connote either state—or even a combination of both an unexpected and a temporally abrupt quality—in a given context, [but] what matters for our purposes is what the word was intended to mean in the context of the 'sudden and accidental' exception to the pollution exclusion." Id. Within the context of that policy, and due to "the juxtaposition of the word 'sudden' with the word 'accidental,' " the court concluded that the definition of "sudden" included the phrase "temporally abrupt . . . ." Id.

We conclude that the meaning of the word "sudden" as used in the context of the collapse provision of the policy in the present case includes the "temporally abrupt" quality of the word. Although the language in the present case does not use the phrase "sudden and accidental," we conclude that our Supreme Court's reasoning in *Buell* and *Jemiola* is instructive. In both cases, the court emphasized the importance of interpreting words in the context of the policy at issue and the facts of the case. See *Jemiola* v. *Hartford Casualty Ins. Co.*, supra, 335 Conn. 134; *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 540. Furthermore, although the plaintiffs cite to dictionary definitions of "sudden" in support of their argument that "sudden" is an ambiguous term, "[t]he existence of more than one dictionary definition is not the sine qua non of ambiguity." (Internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 546. It is untenable to construe the word "sudden" "as an event whose only requirement is that it be unexpected to the observer." (Internal quotation marks omitted.) Id., 544. "A provision in an insurance policy is ambiguous only when it is *reasonably* susceptible of more than one reading"; (emphasis in original) *Jemiola* v. *Hartford Casualty Ins. Co.*, supra, 135; and, here, the word sudden cannot be susceptible to the meaning the plaintiffs ask us to ascribe to it. Here, as

the trial court noted, the cracks in the walls of the plaintiffs' basement have occurred gradually over time, and, as we noted earlier in this opinion, the cracks do not constitute a " 'caving in . . . .' " In the context of this case, therefore, the word "sudden" cannot be construed to encompass the gradual nature of the cracking that has occurred in the walls of the plaintiffs' basement. Thus, the trial court correctly concluded that there was no genuine issue of material fact as to whether the cracks in the walls of the plaintiffs' basement constituted a " 'sudden . . . caving in . . . .' "

## II

The plaintiffs next claim that the trial court failed to apply the correct standard in granting the defendant's motion for summary judgment. Specifically, they contend that the court improperly shifted the burden to them, and that the defendant "offered no evidence that affirmatively demonstrated that the [plaintiffs'] home had not caved in." We conclude that the trial court applied the correct standard in granting the defendant's motion for summary judgment.

The general principles governing a trial court's decision on a motion for summary judgment are well established. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 319–20, 77 A.3d 726 (2013). "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents. . . . The opposing party to a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Brusby* v. *Metropolitan*

*District*, 160 Conn. App. 638, 646, 127 A.3d 257 (2015).

In their complaint, the plaintiffs alleged that the "pattern cracking" damage to their basement walls constituted a " 'collapse' " and was covered under the collapse provision of the policy. In its motion for summary judgment, the defendant argued that there was no genuine issue of material fact as to whether the damage to the plaintiffs' basement walls constituted a "collapse" as defined in the policy. First, the defendant argued that the "slow degradation of concrete that took years to develop" could not constitute a " 'sudden' " collapse, as that term is used in the policy's definition of collapse. In support of its argument, the defendant provided evidence in the form of statements from the plaintiffs' engineers, Silva and Grandprè, as well as its own engineer, Joseph Malo, all of whom inspected the property and stated that the chemical reaction occurring within the basement walls was slow and took place over a long period of time.

The defendant also argued that the plaintiffs could not show that the damage constituted a " 'collapse' " because the house had not collapsed, fallen down or caved in, and it was safe to live in. The defendant pointed again to Silva's and Grandprè's statements that replacement of the plaintiffs' foundation was not warranted at that time and that the plaintiffs' house may never fall down. In addition, the defendant referred to Grandprè's statements that the plaintiffs' basement walls were plumb, the cracks were generally smaller than he had seen in other residences, the home was safe to live in, and the foundation was able to support the load of the house above and was able to keep out soil and water.

In their objection to the defendant's motion, the plaintiffs offered an interpretation of the policy language at issue suggesting that the mere cracks in the basement walls constituted a "collapse" as defined in the homeowners policy. The plaintiffs argued that the damage constituted a "caving in" because that phrase is defined as to " 'yield' " or to " 'submit to pressure' " and pointed to Grandprè's statement that the basement walls had yielded to the internal force of the chemical reaction in the concrete. The plaintiffs further argued that the word " 'sudden' " was ambiguous and should be construed in their favor to mean " 'unexpected,' " and that "it is only reasonable to conclude that the chemical reaction at work in [the plaintiffs'] walls was completely unexpected."

The trial court construed the language at issue in the policy and concluded that, based on the facts of the case, there was no genuine issue of material fact as to whether the damage to the plaintiffs' home constituted a " 'collapse' " such that it would be covered under the collapse provision of the policy. The court concluded that the defendant met its burden of establishing that

there was no genuine issue of material fact by providing evidence that the house had not fallen or caved in, was safe to live in, and that the damage occurred over a period of time. The plaintiffs argued in their opposition that the cracking, in and of itself, constituted a "caving in" because that phrase should be interpreted to mean to " 'yield' " or to " 'submit to pressure' " and that the term " 'sudden' " means " 'unexpected' " and that the cracking occurred unexpectedly. The court, however, found that there was "no evidence of any displacement, shifting or bowing of walls. . . . There is no evidence that any loss of strength associated with the cracking has undermined the structural integrity of the building or part of it such that a part of the building has actually given way to external forces." Therefore, the plaintiffs failed to recite specific facts that contradicted those provided by the defendant's evidence because they did not allege or provide any evidence that the damage to the walls of their basement constituted more than mere cracking. See, e.g., *Brusby* v. *Metropolitan District*, supra, 160 Conn. App. 646. The court concluded that, even when construing the facts in the light most favorable to the plaintiffs, the mere cracking in the basement walls of the plaintiffs' home could not support a finding that the plaintiffs' home suffered a "collapse" as defined in the policy.

Therefore, we conclude that the plaintiffs failed to show that a genuine issue of material fact existed as to whether the damage to their property constituted a "collapse" as covered under the insurance policy provided by the defendant. Accordingly, the trial court did not err in rendering summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiffs also claim that the court erred in rendering summary judgment in favor of the defendants on their extracontractual claims. Because we conclude that the trial court properly granted the defendant's motion for summary judgment as to the breach of contract claim, the plaintiffs' extracontractual claims also fail. See, e.g., *Zulick* v. *Patrons Mutual Ins. Co.*, 287 Conn. 367, 378, 949 A.2d 1084 (2008) (trial court's rendering of summary judgment in favor of defendant on breach of contract claim was proper, therefore, there was no genuine issue of material fact as to whether application of policy constituted violation of extracontractual claims).

[2] The plaintiffs also argue that the defendant's interpretation of "sudden" as meaning "temporally abrupt" would render coverage illusory. Specifically, they contend that requiring the insured to wait for a catastrophic event to occur, such as a complete falling to the ground of their home, "defies the reasonable expectations of the insured and serves only to render the collapse coverage illusory." We disagree that the coverage provided by the defendant is illusory. The policy's definition of "collapse" provides coverage before a complete falling to the ground of a home, such as when "a building is in imminent peril of falling or caving in and is not fit for its intended use." (Internal quotation marks omitted.) Coverage is not rendered illusory merely because the policy's definition of collapse does not encompass the damage to the plaintiffs' basement walls.